THE CITY OF NEW YORK, Appellant, *v.* EDWARD P. BRYAN et al., as Trustees of the Creditors, Stockholders and Members of the NEW YORK AND LONG ISLAND RAILROAD COMPANY, Respondents.

Street railroads — effect of ordinance permitting street railroad company to construct railroad and tunnel in city streets.

The consent of the municipal authorities that a railroad company construct its tunnel and railroad in the city streets is not the grant of an independent franchise. Not only the franchise to be a corporation, but the franchises granted to the corporation, when formed, spring from the state; therefore, the consent of the city is but a step in the grant of a single, indivisible franchise to construct and operate a street railroad.

The fact that the consent of municipal authorities permitting a railroad company, incorporated under the General Railroad Law, to construct its railroad and a tunnel in the city streets, prescribed no limit of time

within which the road should be completed, does not preserve the franchise and corporate rights of the company from forfeiture and defeasance for its failure to finish the road and put it into operation within ten years from the time of its incorporation, as required by section 5 of the Railroad Law (L. 1890, ch. 565), although the company had commenced the construction of the road within five years and expended ten per cent of its capital thereon. The statute provides not only that the corporate existence shall cease but the corporate powers also, and that, in the same contingency, the franchise bestowed on the corporation shall cease.

The legal status of such a franchise and the rights of the parties, claiming to be the owners thereof, to the property and structures created in the execution of the franchise, should be determined only in a litigation between the people of the state, from whom the franchise sprang, and the claimants thereto, so that the determination shall be binding and conclusive on everybody. *People* v. *O'Brien*, 111 N. Y. 1, distinguished. *City of New York* v. *Bryan*, 130 App. Div. 658, reversed.

(Argued June 7, 1909 ; decided October 19, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 18, 1909, in favor of defendants upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The New York and Long Island Railroad Company was incorporated on July 30, 1887, under the General Railroad Act of 1850, for the construction, maintenance and operation of a railroad from Long Island City through a tunnel under the East river and under streets and lands in the city of New York to a connection with the New York Central and Hudson River railroad at Ninth avenue and Thirtieth street, with two branches, one extending to the Grand Central Depot and the other to the Hudson river tunnel in the vicinity of Washington Square.

By an ordinance passed by the board of aldermen on December 23, 1890, the city of New York consented to the construction of a double-track railroad by the New York and Long Island Railroad Company through a tunnel under Forty-second street from its east end to a point therein between Tenth and Eleventh avenues, in accordance with plans and

profiles deposited with the board of aldermen. This assent was given upon certain terms and conditions therein specified. On October 27, 1891, the board of aldermen of Long Island City (of which municipal corporation the city of New York is the successor), by an ordinance approved by the mayor, assented to the construction of a double-track railroad by the same company, beginning at a point in the middle of Fifth street at low-water mark on the east side of East river, and thence running easterly beneath streets and private property to a point on Fourth street, thence along Fourth street to Van Alst avenue, and thence northeast to Meadow street.

On August 13, 1891, the directors of the railroad company changed its profile and route so as to conform to the foregoing consents, and extended its route in New York city from Forty-second street, between Tenth and Eleventh avenues, to Forty-first street and Eleventh avenue, and to Twelfth avenue to the pier line, with a branch in Eleventh avenue from Forty-second street to Forty-third street. On January 11, 1892, the board passed a resolution accepting the rights, privileges and grants set forth in the resolution of the board of aldermen of the city of New York, adopted December 23, 1890, as already mentioned, and a copy of such resolution was filed with said board of aldermen in the following month.

Fourteen years later, in February, 1906, the New York and Long Island Railroad Company brought an action in the Supreme Court against the city of New York and others, in which the court (on December 26, 1906) duly determined " That said plaintiff had complied with all laws and done all lawful acts to entitle it to construct, maintain and operate its proposed line of railroad as then under construction by it in portions of the routes as to which the assents of the former city of New York and of Long Island City had been given, as hereinbefore stated;" that the company had acquired and then (at the time of the rendition of the judgment) had due legal power and lawful authority to construct and operate its tunnel and railroad; that the time of the company to complete the construction of its tunnel would expire December 31, 1906; and

in that action a judgment was duly entered restraining the city of New York and its officers, employees and agents from molesting or interfering with the plaintiff in the construction of its tunnel and railroad. This determination and judgment still remain in full force and effect.

After the passage of the ordinances by the New York city and Long Island City boards of aldermen which have been mentioned, and the acceptance by the company of the grants and privileges therein contained, the company commenced and prosecuted the construction of a portion of its railroad upon the specified routes as follows: (1) In Fourth street, Long Island City, from Van Alst avenue to West avenue; (2) from Fourth street and West avenue in Long Island City through private property to the East river at the bulkhead line of 1898; (3) in the borough of Manhattan from the pier and bulkhead line of 1857, westerly along Forty-second street to the Grand Central Depot; and under the East river the construction of the line of railroad (tunnel) was upon a strip of land under water duly granted to the company by the state of New York through the commissioners of the land office.

On January 1, 1907, the company had not completed its railroad or tunnel or operated the same on any part of its route, but the same had only been partially constructed or completed.

" By reason of the failure of the said New York and Long Island Railroad Company to construct its tunnel and railroad before the 1st day of January, 1907, the corporate existence of the said railroad company lapsed and by virtue of the provisions of section 30 of the General Corporation Law the then directors of said railroad became trustees of the creditors, stockholders and members of the said New York and Long Island Railroad Company." The defendants were such directors on January 1st, 1907.

Upon the foregoing facts the present controversy was submitted to the Appellate Division of the Supreme Court. It was asked to decide whether the franchises, rights and privileges granted by the boards of aldermen of the city of

11

New York and Long Island City to the New York and Long Island Railroad Company did cease and determine on January 1, 1907, and whether such franchises, rights and privileges passed to the defendants as trustees, as aforesaid ; and the parties agreed that the court should render such judgment as should be proper upon the facts which have been stated. The Appellate Division rendered judgment that the franchises, rights and privileges aforesaid did not cease and determine, but passed to the defendants as trustees under section 30 of the General Corporation Law; that the occupation by the defendants of the tunnel, tracks, structure and property of the New York and Long Island Railroad Company on and after January 1, 1907, was and is lawful; and that the city of New York be enjoined from interfering therewith.

The judgment of the Appellate Division is now brought by the city before the Court of Appeals for review.

*Francis K. Pendleton, Corporation Counsel (Theodore Connoly* and *Clarence L. Barber* of counsel), for appellant. On January 1, 1907, the franchises, rights and privileges granted to the railroad company by the aldermen of Long Island City and by the mayor, aldermen and commonalty of the city of New York ceased and determined. (L. 1890, ch. 565, § 5 ; *Matter of B. R. Co.,* 72 N. Y. 245 ; *Matter of B., Q. C. & S. R. R. Co.,* 185 N. Y. 171.) Neither the primary franchise to exist, nor the secondary franchise to act in a specified business has any of the attributes of property. Both of these franchises cease to exist at the dissolution of the corporation. (*Lord* v. *E. L. A. Society,* 109 App. Div. 262; *People* v. *O'Brien,* 111 N. Y. 34; *White* v. *Met. Ry. Co.,* 139 N. Y. 26 ; *Paige* v. *Schenectady,* 178 N. Y. 112; *City of Rochester* v. *R. Ry. Co.,* 182 N. Y. 122, 124 ; *Matter of L. A. E. L. & P. Co.,* 51 Misc. Rep. 407 ; 117 App. Div. 80; 188 N. Y. 361; *Potter* v. *Collis,* 19 App. Div. 392; 156 N. Y. 16.)

*Morgan J. O'Brien* and *H. W. Alden* for respondents. The consent of the municipal authorities to the construction

of the railroad, when acted upon, ceased to be a power, and became property, which like other property, is not lost upon the termination of the corporate existence of the railroad, but is preserved and vested in the directors, as trustees. (*People v. O'Brien*, 111 N. Y. 1; *Milhau v. Sharp*, 27 N. Y. 611.) A legal distinction exists between the franchise of the New York and Long Island Railroad Company to do business as a railroad corporation, and the special or secondary franchise permitting the use of public streets for the operation of a railroad. (*People v. O'Brien*, 111 N. Y. 1; *People v. B., F. & C. I. R. R. Co.*, 89 N. Y. 84; *People v. Metz*, 50 N. Y. 61.)

CULLEN, Ch. J.    The learned Appellate Division seems to have disposed of the case on the theory that what it terms the secondary franchise, that is to say, the consent or permission of the municipal authorities to the railroad company to construct its tunnel and railroad in the city streets, not having prescribed any limit of time within which the road should be constructed, was, when acted upon to some extent, a property right not subject to defeasance or forfeiture by the failure of the company to comply with the terms of the General Railroad Act under which it was incorporated, which prescribes that on the failure of the company to finish its road and put it in operation within ten years from the time of filing its articles of incorporation, its corporate existence and powers shall·cease. (Railroad Law of 1855, § 47, as amended by L. 1867, ch. 775; R. R. Law of 1890, § 5.)    In other words, it treated such consent as if it were a grant of a franchise wholly disconnected from the legislation of the state which authorized the incorporation of the railroad company, and, therefore, held that it passed to the directors of the corporation at the time of its dissolution with the other property which the company might have had at that time, to be administered for the benefit of its creditors and stockholders.    It is unquestionably true that the franchise to construct and operate a railroad is different from the franchise to be a corporation.    As pointed

ont by Judge VANN in *Lord* v. *Equitable Life Assur. Soc'y* (194 N. Y. 212), the former may be granted to individuals. It is not necessary that it be granted to a corporation (*Village of Phœnix* v. *Gannon*, 195 N. Y. 471), and when granted it becomes property. It cannot be arbitrarily recalled unless a reservation of that power is contained in the grant. (*Coney Island, Ft. H. & B. R. R. Co.* v. *Kennedy*, 15 App. Div. 588; *Suburban Rapid Transit Co.* v. *Mayor, etc., of N. Y.*, 128 N. Y. 510.) But though property, it is subject to defeasance or forfeiture by failure to exercise it (*People* v. *Broadway R. R. Co. of Brooklyn*, 126 N. Y. 29), or by subsequent abandonment after it has been exercised. (*People* v. *Albany & Vermont R. R.*, 24 N. Y. 261.) In the *Broadway R. R. Co.* case Judge EARL said: "The power of the court to declare the franchise of the defendant forfeited for non-user is undoubted." (P. 44, citing authorities.) In *People* v. *Kingston & M. Turnpike Co.* (23 Wend. 193, 204) Chief Justice NELSON said of the doctrine that a franchise may be lost by non-user: "The principle is not new; it has been always so held at common law as fundamental." Nor does it matter that no time for the building of the road was specified in the consent. Chancellor KENT, speaking of franchises, says: "They contain an implied covenant on the part of the government not to invade the rights vested, and on the part of the grantees to execute the conditions and duties prescribed in the grant." (3 Comm. *458.) Therefore, if no time is prescribed, the franchise must be exercised within a reasonable time.

Treating the case, therefore, from the point of view assumed by the Appellate Division, the statement of facts was inadequate to enable the court to render any judgment. In that statement we have simply the fact that the company "commenced and prosecuted the construction" of its railroad on specified portions of its line. But as to the extent of the work done by the company, whether the work had been prosecuted with reasonable diligence, and whether the company at the time of its dissolution was still engaged in its

prosecution, the statement is silent.   It is true the statement recites that in an action brought by the company against the city it was adjudged on December 26th, 1906, that the company was entitled to construct and maintain its line of railroad.   But it was also adjudged that the time of the company to complete its tunnel would expire on December 31st following.   So it is not very clear how that judgment helps the defendants.   If the doctrine of the Appellate Division is correct, that the franchise granted to a railroad company upon its commencing the construction of its road within five years and expending 10 per cent of its capital thereon, is thereafter subject to no limitation, defeasance or forfeiture, the defendants are under no obligation to ever complete or operate the railroad, and the consideration for which the grant was necessarily made — the convenience and accommodation of public travel — fails.   (*Fanning* v. *Osborne,* 102 N. Y. 441.)   This doctrine cannot prevail.   There is nothing in *People* v. *O'Brien* (111 N. Y. 1) in conflict with these views.   The only proposition there decided was that the reservation of the power to alter or repeal the charter of a corporation did not reserve the power to revoke or recall the franchises given to it to construct a railroad.   (See opinion of VANN, J., in *Lord* v. *Equitable Life Assur. Soc'y, supra.*)   In that case there was no charge of any failure to exercise the franchise or of its misuser.

But the consent of the municipal authorities was not the grant of an independent franchise like the deed from the owner where the railroad runs through private property. Not only the franchise to be a corporation, but the franchises granted to a corporation when formed, spring from the state. It is the elementary definition of a franchise that it is a grant from the sovereign power.   (3 Kent's Comm. *458; *Fanning* v. *Osborne,* 102 N. Y. 441.)   In *Beekman* v. *Third Ave. R. R. Co.* (153 N. Y. 144, 152) this court said : "The authority to make use of the public streets of a city for railroad purposes primarily resides in the state, and is a part of the sovereign power, and the right or privilege of constructing and operat-

ing railroads in the streets, which for convenience is called a franchise, must always proceed from that source, whatever may be the agencies through which it is conferred." It is true that since the adoption of the constitutional amendment of 1875, no act of the legislature can authorize the laying of railroad tracks in the streets without the consent of the local authorities, but that in no way modifies the principle that the grant proceeds from legislative authority. The case is most analagous to that of a trustee who is authorized to convey the corpus of the trust only with the consent of the beneficiary. The consent of the beneficiary is necessary, nevertheless the title acquired by the grantee is that of the trustee and not that of the beneficiary. Therefore the consent of the city was but a step in the grant of a single, indivisible franchise to construct and operate a street railroad. The legislature had provided by the act under which the company was organized that unless it finished its road and put it in operation within ten years from the filing of its articles of incorporation, "its corporate existence and powers shall cease." Though the franchise to maintain the railroad was not dependent on the existence of the corporation, the statute provides not only that the corporate existence shall cease, but the corporate powers also. In other parts of the statute is an enumeration of the powers conferred upon corporations organized under the act, to wit, to build their railroads, acquire land for that purpose, etc.; in other words, their franchises. When the legislature enacted that the powers of the corporation should cease, it intended thereby that in the same contingency the franchises conferred on the corporation should cease. What possible benefit could accrue from the dissolution of the corporation for failure to exercise its franchises in time, if the franchise itself is to continue for the benefit of the stockholders, who might form a new corporation and to it transfer the franchise? What difference could it make if the franchise was to be held by the New York and Long Island Railroad Company, or by a new corporation called the Long Island and New York Railroad Company? But it is unneces-

sary to pursue the discussion, for we think the question settled by the decision of this court in *Matter of Brooklyn, Sub. & Q. Co. R. R. Co.* (185 N. Y. 171). (See, also, *Matter of Brooklyn, Winfield & N. R. Co.*, 72 N. Y. 245.) That, however, does not dispose of this case.

It appears that the subsoil of Forty-second street is occupied by the defendants' tunnel from the East river to Fourth avenue, but west of that point neither the defendants nor the company have entered upon the street. If the defendants should seek to enter upon the streets or parts of streets of the city not already in their possession, the city authorities doubtless could resist such action, for the franchise of the company in respect thereto has ceased. (*Brooklyn Steam Transit Co.* v. *City of Brooklyn*, 78 N. Y. 524.) But what the legal status is of a railroad partially constructed where the company fails to complete it within the prescribed period has not as yet been decided by the courts of this state. In the submitted statement the plaintiff prays that the franchises granted the railroad company by the municipal authorities be declared to have ceased and determined, that they did not pass to the defendants as trustees for the creditors and stockholders of the company, and that the plaintiff be declared entitled to prevent the use and occupation of the streets by the defendants. The defendants ask judgment that it be declared that such franchises have not ceased, but have passed to the defendants as trustees; that their occupation of the streets is lawful, and that the plaintiff be enjoined from interfering therewith. From this it is apparent that what both parties seek to have determined in this submision is the status of the franchise granted to the company ; whether, however, only as affecting that part of the city streets already occupied by the defendants, or whether as embracing all the streets mentioned in the grant, is by no means clear, and the judgment is subject to the same uncertainty. Now this is the very question which in our view ought not to be decided in a litigation between the present parties. As already said, if the defendants sought to extend their present occupation and the

city should resist it, it would become necessary to decide the company's rights therein. So, also, if in the discharge of its municipal functions it became necessary for the city to enter into the defendants' tunnel, below the surface of the street, and the defendants should resist, it is possible that the court might in litigations arising therefrom be compelled to decide the rights of the defendants to the franchises and the structure in the particular streets occupied by it. But nothing of the kind is alleged. It is not asserted that the defendants' tunnel in any way interferes with the public use of the street. While the title to the streets in the borough of Manhattan is in the city, its title is not that of a private owner, but in trust for public purposes. The franchise of the defendants' predecessor proceeded, as already shown, from the state. The constitutional requirement has been complied with, for the city has given its consent. It may well be that public convenience and advantage will be best subserved by allowing the defendants to complete and operate that portion of their road which has been in process of construction. It is possible that for the permanent protection of defendants' privileges a general statute (*Matter of Brooklyn, W. & N. R. R. Co.*, 75 N. Y. 335) is necessary. However that may be, the legal status of that franchise and the rights of the defendants, or the company to which they succeeded, to the property and structures created in the execution of the franchise should be determined only in a litigation between the people of the state, from whom the franchise sprang, and the defendants, wherein a determination will be binding and conclusive on everybody, and not in a suit between the defendants and third parties, unless it is absolutely necessary so to do.

We are of opinion, therefore, that the judgment should be reversed and the proceedings dismissed, without costs to either party.

EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur; GRAY, J., absent.

Judgment reversed, etc.