[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 215 
This suit is the outcome of a notice served by the municipal authorities of the city of *Page 217 
New York upon the New York Central and Hudson River Railroad Company, requiring the removal of its tracks from Tenth, Eleventh and Twelfth avenues and West street. The judgment enjoins the city and its officers from removing or attempting to remove these tracks. It is based upon the legal proposition that the right thus to occupy the streets in question is derived by the New York Central and Hudson River Railroad Company from the state, through the legislature, and not from the city; that such right was conferred upon the plaintiff's predecessor in title in 1846, and has never been taken away, and that it can only be taken away by the power which granted it, that is to say, the legislature itself.
The New York Central and Hudson River Railroad Company came into existence in 1869, by virtue of a consolidation between two pre-existing railroad corporations, the New York Central Railroad Company and the Hudson River Railroad Company, pursuant to the provisions of chapter 917 of the Laws of 1869, entitled "An act to authorize the consolidation of certain railroad companies." The agreement of consolidation provided that the new corporation should continue for the term of five hundred years. This provision appears to have been authorized by the statute cited, which empowered the directors of the companies proposing to consolidate to enter into a joint agreement for the purpose, "prescribing the terms and conditions thereof." The act of 1869 also provided that all the provisions of the General Railroad Act of 1850 "shall be applicable to the new corporation so to be formed as aforesaid, so far as the same are now applicable to the railroad companies of this State, which may be consolidated with any other company or companies by virtue of this act." (Section 8.) The General Railroad Act provided that articles of association thereunder should state the number of years during which a railroad company should continue (Laws of 1850, ch. 140, § 1), and this provision having thus been made applicable to a consolidated *Page 218 
corporation formed under chapter 917 of the Laws of 1869, it authorized the directors of the companies proposing to unite to fix the period of existence of the corporation born of the consolidation. The pre-existing New York Central Railroad Company was itself the offspring of a consolidation pursuant to chapter 76 of the Laws of 1853 under an agreement which fixed its corporate life at 500 years, while the existence of the Hudson River Railroad Company was originally limited to 50 years from May 12, 1846 (Laws of 1846, ch. 216), capable of course of being extended by the authority of the legislature.
The right or franchise to occupy the streets in controversy in this action was conferred upon the Hudson River Railroad Company by the act cited, under which it was organized, and it is the contention of the appellants that the duration of the franchise was limited to the term in which that statute authorized it to carry passengers and property, to wit, fifty years. If this fifty years' limitation did apply to the franchise, under a correct construction of chapter 216 of the Laws of 1846 the franchise could not be extended by any action taken by the grantee, either alone or in the process of consolidating with the New York Central Railroad Company; and, so far as any of the opinions below intimate a contrary view, we are unable to agree with them. We are satisfied, however, that the duration of the franchise was not thus limited, but that the limitation applied to the corporate existence of the Hudson River Railroad Company only (which might be extended) and not at all to the location of its tracks in the streets of New York.
The act incorporating the Hudson River Railroad Company was passed on May 12, 1846, and is entitled "An act to authorize the construction of a railroad from New York to Albany." The first section reads as follows:
"Section 1. All persons who shall become stockholders pursuant to this act, shall be and they are hereby constituted a body politic and corporate, by the name of `The *Page 219 
Hudson River Railroad Company,' with power to construct a single, double or treble railroad or way, between the cities of New York and Albany, commencing in the city of New York, with the consent of the corporation of the city of New York, and passing through the counties of Westchester, Putnam, Dutchess, Columbia, and ending at some point on the Hudson river, in the county of Rensselaer, opposite the city of Albany, to be laid with an iron rail weighing not less than seventy pounds per lineal yard; with power to construct such branch or branches, for depot and station accommodations, as may be required for the business of said railroad; and to trans port, take or carry any property and persons upon the same, by the power and force of steam, of animals, or of any mechanical or other power, or of any combination of them, for the term of fifty years from the passage of this act; it being expressly understood that nothing contained in this act shall authorize or allow the construction of a bridge across the Hudson river; but the said company may, with the consent of the corporation of the city of Albany, establish a ferry across the said river at Albany, for the accommodation of the business of the said railroad."
In section 4 of the same statute it is provided that the directors of the corporation "may locate their railroad on any of the streets or avenues of the city of New York, westerly of and including the Eighth avenue and on or westerly of Hudson street, provided the assent of the corporation of said city be first obtained for such location."
The last section (§ 36) provides that the legislature "may at any time alter or repeal this act."
The legislature has not exercised its reserved power to repeal, up to the time of the argument before us.
The assent of the corporation of the city of New York to the location of the tracks of the Hudson River Railroad Company on the streets in controversy was duly given by ordinance approved by the mayor on May 6, 1847, and subsequent ordinances. The assent of the city did not *Page 220 
assume to prescribe any limit of time during which such occupation of the streets should continue.
As has already been intimated, we think no such limitation of the franchise is to be found in the charter of the Hudson River Railroad Company.
A strong reason for regarding the fifty years' limitation as applicable only to the life of the corporation is furnished by the forms of legislation in reference to the organization of railroad companies which prevailed before and at the period when this statute was enacted. Railroad companies were then incorporated by special and not under general laws; and the common practice was at the beginning of the statute to prescribe the duration of the life of the corporation — which was usually fifty years. Such limitations are to be found in the charters of the Saratoga Schenectady Railroad Company (Laws of 1831, ch. 43), Rensselaer Saratoga Railroad Company (Id. ch. 131), Watertown Rome Railroad Company (Id. ch. 173), Lake Champlain 
Ogdensburg Railroad Company (Id. ch. 205), Long Island Railroad Company (Laws of 1834, ch. 178), Auburn Syracuse Railroad Company (Id. ch. 228), Hudson Delaware Railroad Company (Laws of 1835, ch. 126), and the Rochester Lockport Railroad Company (Laws of 1837, ch. 427), and many more examples might be cited.
The street franchise is granted in a different section of the statute, quite dissociated from the time limit. The language leaves the duration of the franchise wholly indefinite and undetermined. It was unquestionably in existence, however, and in the lawful enjoyment of the Hudson River Railroad Company when that corporation was merged with the New York Central in 1869. The consolidation act of that year provided that upon the consummation of the acts necessary to consolidate the constituent companies "all and singular the rights, privileges, exemptions and franchises of each of said corporations, parties to the same, and all the property, *Page 221 
real, personal and mixed, and all the debts due on whatever account to either of said corporations, * * * shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed; and all claims, demands, property,rights of way and every other interest shall be as effectuallythe property of the new corporation as they were of the formercorporations, parties to the said agreement and act; and the title to all real estate, taken by deed or otherwise, under the laws of this State, vested in either of such corporations, parties to said agreement and act, shall not be deemed to revert or be in any way impaired by reason of this act, or anything done by virtue thereof, but shall be vested in the new corporation by virtue of such act of consolidation." (Laws of 1869, ch. 917, § 4.) We see no escape from the conclusion that by means of this enactment and the proceedings thereunder the legislature transferred to the plaintiff the franchise in the New York city streets which it had originally bestowed upon the Hudson River Railroad Company in 1846.
That franchise, it must be borne in mind, proceeded from the state and not from the city. At that time, the authority of the legislature over the streets of a municipality was not subject to the constitutional restrictions which now exist. The legislature chose to make the location of the tracks in the streets of New York dependent upon the assent of the municipal corporation, but it was not under any legal obligation to do so; and the fact that it did so, gave the city no authority to withdraw or cancel the franchise after it had once been made effective by the city's consent. Assuming the existence of that power in any one, it belonged and still belongs to the legislature and not to the corporation of the city of New York. (See City of New York v.Bryan, 196 N.Y. 158.) The learned counsel for the respondent, relying upon the case of People v. O'Brien (111 N.Y. 1) argues that "the grant to the Hudson River Railroad *Page 222 
Company was in fee and invested the railroad company with an interest in the streets in perpetuity to the extent necessary for the railroad which it was authorized by the legislature to construct, maintain and operate." There is a manifest difference, however, between the franchise which was held to be beyond revocation or recall in the O'Brien case and that under consideration here. That was the entire franchise to construct and operate a railroad. "The only proposition there decided was that the reservation of the power to alter or repeal the charter of a corporation did not reserve the power to revoke or recall the franchises given to it to construct a railroad." (City ofNew York v. Bryan, supra, p. 165.) The permission given to the directors of the Hudson River Railroad Company by the act of 1846 "to locate their railroad" on the streets in controversy was considered early in the history of this court, as appears from the opinion of DENIO, Ch. J., in Davis v. Mayor, etc., of NewYork (14 N.Y. 506, 520), where he said: "The special subject of railroads passing through or terminating in cities, early engaged the attention of the legislature, and in particular cases where such roads terminated in the city of New York, express power was given to the municipal government to license their location in the streets. (Charter of the N.Y. Harlem R.R. Co. [L. 1832, ch. 156], § 1; Charter of the Hudson River R.R. Co. [L. 1846, ch. 272], § 1.) It will be remembered that the cases provided for in these statutes were railroads running from one part of the state to another, and to be located for the most part in the country, and upon land to be purchased or acquired by the companies, and where the intersection of a highway, or the running upon the streets of a city, was merely an incident of the general design, and where the whole enterprise would be greatly embarrassed or entirely frustrated unless some power to run upon highways or streets were vested in some public body or magistrate." This permission, however, as I have endeavored to show, *Page 223 
sprang originally from the state. Even if it conferred an irrevocable property right under the doctrine of People v.O'Brien, it would not follow that it was incapable of modification or regulation by the legislature as to the manner in which it might continue to be enjoyed. These questions, however, it is not necessary now to decide; and so far as I have discussed them I express my own impressions only. The right of the respondent to resist the attempt of the city to compel the removal of its tracks in the absence of any action to that end on the part of the state is clear, whatever may be the power of the legislature in the premises.
In granting a franchise of this character, indefinite as to its duration, the legislature evidently contemplated that it should be enjoyed by the successor or successors of the immediate grantee, if that grantee should cease to operate the railroad between Albany and New York, either in consequence of ceasing to be a corporation or for any other reason. But, as Judge EARL said in Miner v. N.Y.C. H.R.R.R. Co. (123 N.Y. 242, 249): "While the life of the corporation was limited to fifty years, it could not have been expected that it should really cease to exist at the end of that period. While the legislature reserved the right to cut its life short, it also had the power to extend it. It is the experience of mankind that such quasi public corporations never come to an end by mere effluxion of time. A railroad corporation which had, during fifty years, rendered a valuable public service and properly discharged its corporate functions would, with the passage of years, become more and more useful and more and more a necessity." In the case at bar the legislature did not in express terms extend the life of the corporation upon which the franchise in question was bestowed, but it provided for the continuance of that life by means of its merger into a corporation which should live 500 years. At the same time the interests of the public in the other direction were protected by the *Page 224 
reserved right of amendment and repeal. There is much evidence in the record before us indicating that these interests demand a radical change in the manner in which the franchise of the plaintiff shall be enjoyed. Indeed it is said in the brief for the respondent: "The conditions existing in the streets through which the cars pass are conceded to be bad and the plaintiff is willing to make them better." These are matters, however, over which the courts have no control. The question upon which this litigation turns is whether the plaintiff can lawfully be put off the streets by the city of New York. The act of the legislature which permitted the Hudson River Railroad Company to go there sixty-five years ago and which the legislature has seen fit to leave in full force and effect ever since, compels us to answer that question in the negative.
It follows that the judgment appealed from must be affirmed, with costs.