WILLSON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, New York County. April 17, 1913.)

1. RAILROADS (§ 222*)—NUISANCE—COMPLAINT—DAMAGES RECOVERABLE.

Where, in an action for damages to plaintiff's property from nuisances arising from the operation of a railroad, there was no allegation in the complaint that the nuisances were the result of negligent, unskillful, or improper operation, plaintiff could only recover damages resulting from unlawful operation of the railroad.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

2. RAILROADS (§ 222*)—OPERATION OF ROAD—ACTION FOR DAMAGES—LOCATION OF RAILROAD—SUFFICIENCY OF EVIDENCE.

Evidence, in a property owner's action for damages from nuisances aris-ing from the operation of a railroad, held to show that the railroad was not laid out and operated on park land, as alleged by plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

3. RAILROADS (§ 222*)—LOCATION OF TRACK—PRESUMPTION.

Where, in a property owner's action for injunction and damages from nuisances arising from the operation of a railroad on nearby premises, it is shown that authority to place tracks on a particular location in a city was granted, and that tracks have been located for over 50 years under such grant without any question being raised by the municipality as to the correctness of the location, it will be presumed, in the absence of proof to the contrary, that the tracks are located on the place of the author-ized location.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

4. RAILROADS (§ 222*)—INJURY FROM OPERATION—ABUTTING OWNER.

Where, in an action for injunction and damages to property from nui-sances arising from the operation of a railroad on nearby premises, it ap-peared that plaintiff's land was about 400 feet from defendant's track and separated therefrom by a driveway and park land, he was not entitled to the rights of an abutting owner.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

5. RAILROADS (§ 222*)—INJURY FROM OPERATION—BURDEN OF PROOF.

Where, in a property owner's action for injunction and damages from nuisances arising from the operation of a railroad, it is shown that, though plaintiff is not an abutting owner, his premises are injured by noises, smoke, soot, and odors arising as claimed, the burden is on defendant to prove its authority to commit the nuisances complained of and to show that its authority was not exceeded.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

6. RAILROADS (§ 18*)—FRANCHISE—RIGHT TO ATTACK—ACTION FOR NUISANCE.

The validity of the franchise under which a railroad company is op-erating can be attacked only in a proper proceeding by the state and not in a property owner's action for injunction and damages from nuisances arising from the operation of the railroad.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 39–44; Dec. Dig. § 18.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. RAILROADS (§ 222*)—OPERATION UNDER FRANCHISE—LIABILITY TO LAND-
OWNER.

Where a railroad company has been authorized by its franchise to run
a road through a given locality and has acquired private property over
which it is authorized to run, it is not responsible to the owners of neigh-
boring property for merely consequential damages necessarily incident
to the operation of its trains.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec.
Dig. § 222.*]

8. RAILROADS (§ 222*)—OPERATION UNDER FRANCHISE—LIABILITY TO LAND-
OWNER.

That a railroad company is operating on its own property under a fran-
chise does not relieve it from liability to the owner of neighboring prop-
erty for nuisances arising from the burning of soft coal and the storing
of offensive live stock in the vicinity of a select residential portion of a
city, where the burning of such coal is not necessary, and the company has
not been authorized by the Legislature to construct a siding at that par-
ticular place upon payment of compensation to the owners of neighboring
property.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec.
Dig. § 222.*]

9. RAILROADS (§ 222*)—INJURIES FROM OPERATION OF RAILROAD—LIABILITY TO
LANDOWNER—DEFENSE.

In a property owner's action for injunction and damages from nui-
sances arising from the operation of a railroad on nearby premises, the
fact that plaintiff's property was owned by the grantor of defendant's
right of way at the time of the grant was no defense for acts which could
not have been reasonably within the contemplation of the parties at such
time.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec.
Dig. § 222.*]

10. LIMITATION OF ACTIONS (§ 55*)—CONTINUING NUISANCE—OPERATION OF
RAILROAD.

A continuing nuisance arising from the operation of a railroad in an
improper manner, so as to cause injury to neighboring property, is not
barred by the statute of limitations until the statutory period has run
from the date of its last repetition.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
299–306; Dec. Dig. § 55.*]

11. RAILROADS (§ 222*)—INJURIES FROM OPERATION—DAMAGES.

Where, in a property owner's action for injunction and damages to
vacant property from nuisances arising from the operation of a railroad
on nearby premises, it appeared that no permanent injury was done to his
freehold, and there was no evidence from which any actual damage for
which recovery could be had could be estimated, he was entitled to merely
nominal damages in connection with an allowance of the injunction.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec.
Dig. § 222.*]

Action by George L. Willson against the New York Central & Hud-
son River Railroad Company for injunction and damages. Ordered
that injunction be allowed and that plaintiff recover nominal damages.

Clarence J. Shearn and J. Bleecker Miller, both of New York City,
for plaintiff.

Alex. S. Lyman, of New York City (Robert A. Kutschback and
George H. Walker, both of New York City, of counsel), for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
    146 N.Y.S.—14

PAGE, J. This action is brought by the owner of a parcel of vacant unimproved land situated at the corner of Riverside Drive and 105th street in the city of New York, to enjoin the New York Central & Hudson River Railroad Company from maintaining and operating its railroad in front of plaintiff's premises, and in Riverside Park, and compelling it to remove its tracks, and for past damages. The grounds of action set forth in the complaint are briefly: That immediately opposite said premises is a public park known as Riverside Park, extending from the westerly side of Riverside Drive to the Hudson river, and which is held in trust by the city of New York for the benefit of the public for the ordinary uses of a public park and for no other purpose whatever; that the defendant without any authority or right has entered into and upon said public park and taken possession thereof, and constructed thereon in front of the plaintiff's premises and for a long distance to the north and south thereof a railroad, and has been and still is operating the said railroad in the said park by cars and trains drawn by steam engines on such railroad day and night without the consent or authority of the plaintiff or his grantors and against plaintiff's right to the use and enjoyment of the aforesaid premises; that the railroad operated by the defendant in said public park consists of four tracks from Seventy-Second street to Ninety-Sixth street, three tracks to Ninety-Eighth street, four tracks to 107th street, three tracks to 108th street, and four tracks to 123d street; that not only does the defendant operate trains on said tracks, but uses a portion of same for storage of cars and allows long trains of cars loaded with live stock to stand upon said tracks, as a consequence of which the atmosphere along said Riverside Drive is polluted with a foul stench from said cars and annoying and disturbing noises are made by the animals; that the operation of both passenger, freight, and switching trains is accompanied by annoying and disturbing noises, consisting of the constant blowing of steam whistles, ringing of bells, and other noises incident to the operation of steam railroad trains, which noises penetrate to the neighborhood of plaintiff's premises and make repose and rest impossible; that the steam engines operating said trains emit ashes, cinders, oil, water, and other substances upon said park in front of plaintiff's premises, and obnoxious gases, smoke, and cinders have been and constantly are emitted by said steam engines into said park and have and constantly do penetrate into plaintiff's premises; that by reason of the foregoing the plaintiff has been deprived of the enjoyment of the use and occupation of his premises, and plaintiff's passage along and through and his enjoyment of the said park has been and is interrupted; that access to the Hudson river forming the westerly boundary of said park was been and is greatly impeded; that the value of plaintiff's property and the rental value thereof has been greatly depreciated; that no proceedings were ever taken by the defendant to condemn the interest of this plaintiff or his grantors in said premises and park, or to compensate the plaintiff or his grantors for the property taken and injured by the construction of such railroad, or to acquire any interest or right in said park; that these injuries are continuous and of a permanent nature.

The answer is a denial of most of the allegations of the complaint admitting that the defendant operates a railroad, part of which extends from Seventy-Second street to 123d street, but denies that the railroad is laid and constructed upon or through park lands, but that it is laid on lands of which the defendant is and at all times mentioned in the complaint was the owner. That said railroad consists of two main tracks, and a siding extending from Seventy-Second to 123d street, with other sidings extending, respectively, from Seventy-Second to Ninety-Fifth, from Ninety-Seventh to 107th street, and from 108th to 123d street. For separate defenses the defendant alleges: (1) Its incorporation and grant or license from the state to operate said railroad as a common carrier, and that the track and sidings are necessary for the proper maintenance, operation, and use of the railroads of the said defendant, and that all land, tracks, locomotives, and cars used thereon are maintained, used, and operated pursuant to lawful authority and that the operation of the said railroad is necessarily attended with noise and with the emission of smoke, steam, vapor, and dust which are unavoidable from the proper management, maintenance, and operation of the railroad. (2) A grant of a right to the right of way of that portion thereof in front of plaintiff's premises from William B. Moffatt, who at the time of the said grant was the owner in fee of a tract of land, including with that portion granted to defendant, the plaintiff's premises. (3) Possession and use of the property for a railroad and the operation thereof with the attendant noise, smoke, steam, vapor, and dust for more than 20 years last past, and the continuance for that period has given a right by prescription to the continuance thereof. (4) Statute of limitations. (5) That such use and occupation of the said lands by the defendant had been open and notorious and was well known to the plaintiff at the time he purchased the premises described in the complaint and has been acquiesced in by the plaintiff without objection until he brought this action. (6) That the plaintiff has an adequate remedy at law.

[1] It will be noticed that there is no allegation in the complaint that the nuisances complained of were the result of negligent, unskillful, or improper operation of the railroad by the defendant. I therefore ruled upon the trial that the plaintiff by his complaint had limited himself to the recovery of damages resulting from the unlawful operation of the railroad. Although the plaintiff does not acquiesce in the correctness of this ruling, on mature reflection I believe the same to have been sound and shall adhere to it.

[2] The plaintiff's allegation that the road of the defendant was laid out and operated upon park land was not borne out by the proof. The Hudson River Railroad Company was incorporated under chapter 216 of the Laws of 1846, and was authorized to construct a single, double, or treble track railroad between the cities of Albany and New York. The directors of such corporation were authorized to locate their railroad on any of the streets or avenues of the city of New York westerly of and including Eighth avenue and on or westerly of Hudson street, provided the assent of the corporation of the city be first obtained to such location, and they were also authorized to make sur-

veys and maps, which were to be certified to and filed by them in the office of the register of the county of New York, designating the lo-cation of the tracks that they deemed most advantageous. Such location maps were filed, as required by statute. By ordinance of the city, approved by the mayor on May 6, 1847, permission was granted to the Hudson River Railroad Company to construct a double track with suitable turnouts along the line of the Hudson river from Spuyten Duyvil creek to near Sixty-Eighth street, occupying so much of the Twelfth avenue as lies along the shore, and thence on streets and avenues not involved in this action. The railroad was built and has occupied the lands upon which it is now constructed for more than 50 years.

[3] The plaintiff claims that the defendant has not shown that the present location of the tracks coincides with those located on the map filed with the register in 1847. Where, however, authority to place tracks on a particular location was granted and tracks have been located for over 50 years under authority of such grant, without question being raised by the municipality of the correctness of the location, the court will presume, in the absence of proof to the contrary, that the tracks as now existing are upon the place of the authorized location. The first legislation providing for the creation and maintenance of Riverside Park is chapter 697 of the Laws of 1867. Under this act a map was filed in the office of the then street commissioner, since transferred to and remaining on file in the office of the president of the borough of Manhattan which shows, as to the portion material to this case, the easterly line of Riverside Drive as parallel to and 400 feet westerly of the westerly line of Eleventh avenue. Riverside Drive is 100 feet wide. Immediately west of that is the "public square," now Riverside Park, of the width, opposite 105th street, of 300 feet. Westerly of the park is shown Twelfth avenue, 100 feet in width, and the bulkhead line, 100 feet westerly of the westerly line of Twelfth avenue. Condemnation proceedings were had and the land acquired for Riverside Park, the westerly line of which was the easterly line of Twelfth avenue. Concededly the tracks of the company were not at this time east of Twelfth avenue, as shown on said map, nor were the defendant's rights condemned and taken for park purposes in this proceeding. The next legislation affecting the park was chapter 496 of the Laws of 1885, entitled an act to define, lay out and establish the boundaries and lines of Riverside Park and Twelfth avenue, between Seventy-Ninth and 129th streets, in the city of New York, wherein it is provided that:

"The permanent westerly boundary of Riverside Park [between the points above designated] shall be the line designated upon the map or plan of the route or roadway of the Hudson River Railroad Company filed on or about the 7th day of September, 1847, in the office of the register of the city and county of New York as the easterly line or side of said route or roadway. * * * The permanent westerly boundary of Twelfth avenue * * * shall hereafter be a line drawn parallel with but distant seventy-five feet westerly from the westerly line of said railway, route or roadway laid out as aforesaid, and all other lands between the westerly line of the said railway, route or roadway and the line hereby established as the westerly boundary of said avenue is hereby declared to be a public street or avenue (and to be known as Twelfth avenue)."

The corporation counsel is authorized to bring condemnation proceedings to carry out the provisions of this act, but it is expressly provided that:

"Nothing herein contained shall affect the rights and franchises of the New York Central & Hudson River Railroad Company."

The next legislation was chapter 152 of the Laws of 1894, entitled an act providing for the improvement of the lands and waterfront adjacent to Riverside Park, in the city of New York, by extending and improving said park and regulating the use of said lands and waterfronts, in which it is provided:

"All those pieces or parcels of land, including land under water and upland fronting upon Riverside Park, in the city of New York, bounded southerly by the southerly side of Seventy-Second street if extended westerly; northerly by the southerly side of One Hundred and Twenty-Ninth street if extended westerly; easterly by the westerly line of the route or roadway of the Hudson River Railroad Company as laid down upon the map of said route or roadway filed in the office of the register of the city and county of New York on or about the 2d day of September, 1847; and westerly by the bulkhead line of the Hudson river * * * are hereby laid out, appropriated and set apart for the public uses following."

The effect of this legislation was to enlarge Riverside Park by establishing a new portion thereof westerly of the railroad and extending to the bulkhead line. This act did not embrace within the territory affected thereby the route or roadway of the defendant. The proof thus demonstrates that the defendant's route or roadway was not and is not located upon the land of Riverside Park, and plaintiff's allegations to that effect are disproved.

[4] The plaintiff's counsel in his brief argues that he has the rights of an abutting owner, and cites freely from the elevated railroad cases. A mere statement of fact as to the location of plaintiff's premises with respect to the defendant's roadway disposes of his contention. His premises are about 400 feet east of the defendant's roadway and abut upon the easterly side of Riverside Drive. The land between Riverside Drive and defendant's roadway comprises Riverside Park, which is terraced down to the defendant's roadway, which is from 90 to 100 feet below the level of plaintiff's premises. To seek to apply to these facts the rules of law which were developed to meet a condition where railroad tracks were elevated upon a permanent structure upon the street immediately in front of or closely adjacent to premises abutting upon that street is more ingenious than sound. See Fobes v. R., W. & O. R. R., 121 N. Y. 505, 517, 24 N. E. 919, 8 L. R. A. 453. Nor is it necessary to consider the interesting question raised by plaintiff's counsel as to the title to land under water, which was attempted to be granted to the defendant by William B. Moffatt. It may be that Moffatt had not acquired title thereto; then the title would be in the city of New York and would be covered by the permission granted to construct the railroad tracks on such lands. In either event plaintiff cannot question the title in this proceeding.

If any title remained in Moffatt, his heirs by appropriate proceedings can assert it. If the title to the property is not good as against

the city, it can protect its rights. The grant by Moffatt and the license of the city are a sufficient answer to this plaintiff's case.

[5] In spite of the distance separating plaintiff's premises from the defendant's railroad, it is not seriously disputed that the noises, smoke, soot, and odors arising from the operation of the defendant's railroad penetrate to the plaintiff's premises and damages ensue therefrom to the plaintiff. These acts constitute a nuisance from which the plaintiff is entitled to relief unless the defendant can show that it is justified and protected by law or license. If the defendant operates its railroad on Twelfth avenue, the burden is upon it to plead and prove a legal right to commit the nuisances complained of, and the justification must be as broad in its scope as the acts perpetrated. In other words, it must show its authority and also that the authority was properly exercised and not in any way exceeded. Clifford v. Dam, 81 N. Y. 52; Brown v. Met. St. Ry., 60 App. Div. 184, 70 N. Y. Supp. 40. The principal question to be determined, therefore, is to what extent the defendant has sustained this burden.

[6] It has been shown that the defendant is a duly incorporated railroad company and has a franchise from the state of New York to operate and maintain its tracks and road in the location in which it now is, and that it is occupying the roadbed and right of way along the shores of the Hudson river openly under a claim of title. The plaintiff has attempted to question both the validity of the franchise and the defendant's title to the land. As to both of these he must fail, as the franchise of a corporation should only be tested in a proper proceeding brought by the state from which it sprang, and courts will not try the title to real property until it is disputed by some one claiming a paramount title, which this plaintiff does not. City of N. Y. v. Bryan, 196 N. Y. 158, page 168, 89 N. E. 467. Furthermore, the Court of Appeals has passed upon the question of the validity of this defendant's franchise in New York Central & Hudson River R. R. v. City of N. Y., 202 N. Y. 212, 95 N. E. 638, in which the franchises both to exist as a corporation and to operate its road were specifically upheld. Until it has been specifically proved to be otherwise in proper actions or proceedings for that purpose, it must therefore be assumed that the New York Central & Hudson River Railroad Company is operating its trains upon the tracks below Riverside Park pursuant to a valid franchise from the Legislature of the state of New York, and that its occupation of the roadbed is a lawful one.

[7] To what extent does this license legalize the nuisances of which the plaintiff complains? The plaintiff does not claim any title in the defendant's roadbed or that any of his property has been actually taken by the defendant. He claims merely as the owner of neighboring land affected by the operation of the road. The Court of Appeals of this state has repeatedly held that, when a railroad company has been authorized by its franchise to run a road through a given locality and has duly and legally acquired the private property over which it is authorized to run, it is not responsible to the owners of abutting and neighboring property for merely consequential damages necessarily incident to the operation of its trains, such as the usual smoke, noises, and odors of steam engines. Fobes v. R., W. & O. R. R., 121 N. Y.

505, 24 N. E. 919, 8 L. R. A. 453; Conabeer v. N. Y. C. & H. R. R., 156 N. Y. 474, 51 N. E. 402; Uline v. N. Y. C. & H. R. R., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661. It is presumed that the Legislature intended to grant to the railroad company the right to operate its trains in the usual manner and to legalize the usual and necessary nuisances which result to the surrounding country.

[8] While its franchise protects the defendant from the necessary consequences of running its trains, I am of the opinion that it is not a defense to all of the acts proved by the plaintiff. The burning of soft coal and the storing of offensive live stock cars in the vicinity of a select residential portion of the city may not be deemed to be acts within either the express or implied terms of the franchise to run a railroad.

"The public character of the defendant's business does not entitle it to maintain a nuisance." Bly v. Edison El. Ill. Co., 172 N. Y. 1–6, 64 N. E. 745, 746 (58 L. R. A. 500).

The principle and rule applicable to these acts are fully set forth in the cases of Garvey v. L. I. R. R., 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550, Bohan v. Port Jervis G. L. Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711, Cogswell v. N. Y., N. H. & H. R. R., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701, and the authorities are collated and discussed. In the Cogswell Case the Court of Appeals said:

"The statutory sanction which will justify an injury to private property must be expressed or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the Legislature contemplated the doing of the very act which occasioned the injury."

As a common carrier the defendant must transport live stock. As an incident to such transportation and delivery it is probably necessary that these cars should stand upon sidings at the destination. We have seen that the defendant company was authorized by the Legislature to construct its tracks with necessary sidings, but this does not justify the use of the sidings in a residential section of the city for the storage of foul and offensive cars. To justify such use it would be necessary to show that the Legislature had expressly authorized the construction of the siding at that particular place and for that particular use, and the Legislature would not have power to grant the authority without provision for compensation to the owners of neighboring property. None of the other defenses pleaded by the defendant is in my opinion sufficient to justify the aforesaid acts.

[9] The fact that the plaintiff's property was owned by the grantor of the defendant's right of way at the time of the grant might be held to be a sufficient justification of any of the usual and necessary results of operating the road (Bennett v. L. I. R. R., 181 N. Y. 431, 74 N. E. 418), but would be no defense for acts which could not have been reasonably within the contemplation of the parties at the time of the grant to the defendant.

[10] No prescriptive right to commit these acts has been proved. It is well settled law that a continuing nuisance of this kind is not barred by the statute of limitations until the statutory period has run from

the date of its last repetition. The defense has therefore failed in these respects and an injunction will issue restraining the defendant from storing or keeping cattle cars or other cars which bear an offensive odor in the vicinity of plaintiff's premises and restraining and enjoining the defendant from operating engines burning soft coal upon that portion of the road which passes the vicinity of plaintiff's premises.

[11] Had the plaintiff proved substantial damages to his property arising from these nuisances, he would be entitled to recover them in this action, but in this regard he has failed. His property is vacant land situated in the heart of a high-class residential section and unavailable for any other purpose than that to which the neighborhood is devoted. No permanent injury to his freehold has been done, and there is no evidence from which the court can judge that he has suffered any actual loss by reason of injury to the rental value of the premises or what proportion of injury may have resulted from soft coal and cattle cars. The plaintiff will therefore receive merely nominal damages of six cents.

Settle findings and decree on notice.