THE CITY OF NEW YORK, Appellant, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

First Department, November 18, 1921.

Ejectment — action to recover possession of strip of land held and used by defendant as part of its railway system from Seventy-second street to Spuyten Duyvil creek — road constructed over land in question with city's approval — estoppel — city estopped from asserting claim to lands where for seventy years defendant's rights had not been questioned and it had expended large amounts in construction and equipment, and paid taxes on right of way — adverse possession — good title by adverse possession shown to property — property of city not in public street or highway may be acquired by adverse possession — right of Legislature to grant franchise in streets without compensation to city — reservation in deeds of upland owners not admission of title in city — evidence as to defendant's profits over right of way properly excluded.

In an action in ejectment to recover possession of a strip of land sixty-six feet in width, running from Seventy-second street to Spuyten Duyvil creek in the city of New York originally a part of the tideway of the Hudson river, now held and used by the defendant as part of its railway system, it

appeared that by the act of incorporation the defendant was given specific permission to occupy such streets and avenues within the city of New York as might be approved by the city authorities; that the route now occupied which includes the lands in question was approved by the city; that the land in question was originally granted to the city as its private property and at the time the defendant's road was constructed there had been mapped out certain streets thereon which were opened after the railroad was constructed; that at the time said consent was given by the city the land in question was considered of very little value; that for more than seventy years no claim has been made by the city that the occupation by the defendant was unlawful; that large amounts of money have been expended by the defendant in construction and equipment in reliance upon the faith of the city's acquiescence in its occupancy, and in payment for land acquired from private owners along the same route; and that during the entire period the defendant has paid taxes to the said city on the right of way.

*Held,* that the opening of the streets on the land in question after the occupancy by the defendant for a public purpose must necessarily have been subject to that purpose and cannot affect the rights of the defendant to the continued occupancy for such public purpose;

That the city of New York is estopped from asserting any claim to these lands at this time.

Property not in a public street or highway may be acquired by adverse possession from a municipality.

The Legislature seems to have the right as to streets and avenues in a municipality to grant a franchise therein to a railroad company without compensation to the city.

Since the defendant's railroad was constructed over the land in question under a claim of right, without any special license from the city of New York, and the right of way has been taxed as the property of the defendant, the occupancy by the defendant for seventy years under such claim of right gives to it a good title by adverse possession.

The reservation in the deeds of the upland owners of any title to the land under water which might be acquired by the city, either by the railroad or by the owners of the upland, whose property was thus taken, is not an admission that title thereto is needed from the sinking fund commission, but simply an act of abundant caution to make its title thereto free from doubt.

Evidence offered as to profits made by the railroad company over the right of way was properly excluded.

Appeal by the plaintiff, The City of New York, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 20th day of December, 1920, upon the verdict of a jury rendered by direction of the court.

*John P. O'Brien, Corporation Counsel* [*J. Bleecker Miller* of counsel], for the appellant.

*Alexander S. Lyman,* for the respondent.

SMITH, J.:

The action is brought in ejectment to recover possession of a strip of land sixty-six feet in width running from Seventy-second street to Spuyten Duyvil creek, now held and used by the defendant as a part of its railway system.

In 1846, by chapter 216 of the laws of that year, the Hudson River Railroad Company was incorporated. That railroad was to run from some point within the city of New York to a point in the county of Rensselaer, opposite the city of Albany, and apparently was deemed by the authorities of the city of New York a most important instrumentality in saving to the city of New York both its export and its import trade, as well as in connecting the city of New York more closely with the interior of the State. The Hudson river is at times unnavigable, and there was no other substantial means of communication for the transportation of passengers and trade existing between New York and Albany. Since the incorporation of this railroad there have been various changes and consolidations and the defendant now claims the rights which were given to this railroad under the act of 1846, and whatever cause may exist, if any, for challenging the legality of these consolidations, this property is held by the present defendant as the successor and grantee of the original corporation created by the act of 1846.

It is unnecessary to recite in detail the several provisions of this act of incorporation. Defendant was given permission, however, by the act to enter the city of New York and to use such avenues and streets within the city of New York as might be approved by said city. The route was selected and approved by the common council of the city. Whatever may have been the authority vested in the sinking fund commission at this time, that such approval is sufficient to meet the requirements of the act has been held by the Court of Appeals in an action by this defendant against this plaintiff, reported in *N. Y. C. & H. R. R. R. Co.* v. *City of New York* (202 N. Y. 212). The act of incorporation of the Hudson

River Railroad Company gave specific permission to occupy the streets and avenues of the city with the approbation of the city authorities. There was nothing specifically said in the act, however, as to the occupancy of any lands owned by the city, other than those lands which were being used for streets and avenues.

The city now claims that this railroad has been located upon lands then belonging to the city which were not included among the streets and avenues, and that its occupancy of such lands constitutes a trespass and is unlawful, authorizing this action of ejectment. This route was laid by the railroad company under agreement with the common council of the city at the time, and the route then covered the lands which are now claimed to be .unlawfully occupied. The rights of the railroad company do not exist under any general law which requires a franchise from the municipality. The franchise was given by the State itself, subject only to the approval of the municipal authorities, which approval has been given. This franchise, while giving the right to construct the road, would not give the right to take private property without compensation, and I will assume for the argument that the land owned by the city which was not used for public purposes was the private property of the city for which compensation might have been required. A large part of the land over which this right of way extends was upon the tideway of the Hudson river, which we will assume was granted to the city of New York as its private property by the Dongan charter in 1686. Upon this land some streets had been mapped, but had not then been opened. It is claimed that the occupancy of these streets is unlawful, although the streets were afterwards opened in accordance with law. But the opening of a street after the occupancy by the defendant for a public purpose must necessarily have been subject to that purpose and cannot affect the rights of the defendant to the continued occupancy for such a public purpose. This is probably not so material because part of this tideway was occupied by the defendant's predecessor, which part has never been opened as a public street, and if the plaintiff is entitled to a judgment ejecting the defendant from any part of this right of way, this judgment is wrong and should be reversed.

The defendant's contention is two-fold, *first*, that this occupancy not only of the streets and avenues, but of the land acquired under the Dongan charter, was open and notorious and consented to by the city authorities, upon which consent the defendant has spent large amounts of money, so that it would be inequitable to allow the plaintiff now to oust the defendant therefrom; and, *secondly*, on the ground that this land has been so occupied adversely to the plaintiff's claim as to give title to the defendant. To my mind it is immaterial whether the title thus claimed by adverse possession is a title to the land in fee or is such a title merely as is involved in an easement to use the property for the purposes of the railroad. If a right to adverse possession has been acquired in either aspect, this action was properly determined and the complaint dismissed.

Upon the question of estoppel, it is well settled that there is no hard and fast rule which will determine the rights of parties to claim the benefits thereof. In 1846, when this railroad was laid out, this tideway was considered of little value. The eagerness of the city of New York to retain its supremacy as the commercial center of the country far overshadowed any claim that it might have for compensation from the railroad for the right of way thus appropriated. No claim was ever made for very many years thereafter of any illegality in this occupancy by the railroad company. The railroad company condemned the rights of all the upland owners for this seven and one-half miles and paid full compensation therefor, upon the faith of this acquiescence by the city in their occupancy of this right of way. Large amounts have been expended in construction and equipment. Large freight depots have been constructed below the point in question, which can only be reached over this right of way, and to take from the defendant this right of way at this time not only would be a severe blow to the road itself, but would be a severe blow to the city in the crippling of commerce passing over this right of way which has now grown to an enormous volume. None of these upland owners whose rights of way were condemned or purchased by the railroad company are here making complaint. They do not ask ejectment. This action is brought simply in behalf of the city, and its right is

mainly based upon the right to this tideway claimed to have been given by the Dongan charter in 1686, and which, in 1846, when this railroad was laid, was of so little value that it might well have been assumed by the railroad, as it was undoubtedly by the authorities of the city, that the advantages to the city itself in the construction of this road were so great that the then value of this tideway was so negligible as not to enter into the consideration in the performance of the duty of the city authorities to protect the interests of the city itself. For over seventy years this has remained unquestioned. For all that time this right of way has been taxed by the city, and the taxes paid thereon by the railroad as a right of way owned by the railroad company, and taxes involving many hundred thousands of dollars have been collected by the city thereupon. To make the claim at this time, after the phenomenal development of this city, then unforeseen, has rendered this tideway of substantial value, would seem unconscionable. The trial court, therefore, properly held that under these circumstances, as well as others which have not been recited in this opinion, the city should be held estopped from asserting any claim to these lands at this time. (3 Dillon Mun. Corp. [5th ed.] §§ 1191, 1194.)

Many cases are cited in the respondent's brief and are referred to in the authorities cited, which hold the general proposition that one standing silently by and seeing large expense put upon property with knowledge of the understanding of the parties expending the moneys that he was entitled to the lands, should not be allowed in equity or in good conscience thereafter to make claim to the property thus enriched.

Moreover, we think as to this property thus held under the Dongan charter as occupied by the defendant, a good title has been shown by adverse possession. That property not in a public street or highway may be thus acquired by adverse possession from a municipality has been held in this court in *Timpson* v. *Mayor* (5 App. Div. 424) and later in the case of *Knapp* v. *City of New York* (140 id. 289) wherein the matter is fully discussed by Mr. Justice CLARKE, now the presiding justice of this court. The Legislature would seem to have the right as to streets and avenues in a municipality to grant a franchise

therein to a railroad company without compensation to the city. The fair import of this franchise granted is not only upon the public streets and avenues of the city of New York, but over private property owned by the city not devoted to streets and avenues. If, as to such private property, it be held that the State has no right to authorize the possession thereof for public purposes without compensation to the city, it would seem to be a logical sequence of such holding that the property held by a municipality, but not for a public purpose, may be acquired by adverse possession as could be done with the property of a private individual. It seems clear to me that this railroad was constructed by the defendant's predecessor over these lands under a claim of right. There is no pretense that any special license has even been given by the city therefor. Such a license could probably only be given by the sinking fund commission. That right of way has been taxed as the property of the defendant and the moneys collected as taxes and not as a license fee. Until the commencement of this action, more than seventy years after the tracks of the defendant were laid, the right of the defendant to use the land has never been questioned. This occupancy for such a length of time under a claim of right is all that is necessary to give a title by adverse possession to the defendant which will protect the defendant from an action to oust it from its right of way. The reservation in the deeds of the upland owners of any title to the land under water which might be acquired by the city, either by the railroad or by the owners of the upland, whose property was thus taken, is not an admission that title thereto is needed from the sinking fund commission. It is simply an act of abundant caution to make its title free from doubt, as was held by this department in the case of *Knapp* v. *City of New York* (140 App. Div. 289). The challenge made by the plaintiff to the acquirement of the title of the private upland owners which was condemned by the defendant's predecessors seems to me entirely immaterial, because no one interested in those lands is questioning the defendant's right of possession.

Furthermore, we are of opinion that the evidence offered as to the profits made by the railroad company over this right of way was properly excluded, *first*, by reason of its

uncertain relevancy in view of the impossibility of appropriation of any certain amount for the occupancy of this right of way, and, *secondly*, because in view of the history of this case the evidence, if admitted, could not change the result.

In my judgment the plaintiff's complaint was properly dismissed and the judgment should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN and MERRELL, JJ., concur; PAGE, J., concurs in result.

Judgment affirmed, with costs.