748   People ex rel. Western Union Tel. Co. *v.* P. S. Comm.

Third Department, July, 1920.          [Vol. 192.

The People of the State of New York ex rel. Western Union Telegraph Company, Relator, *v.* Public Service Commission of the State of New York, Second District, Respondent.

Postal Telegraph-Cable Company, Intervenor.

Third Department, July 8, 1920.

**Public Service Commission — telegraph corporation — power to determine to whom it shall extend credit — powers and jurisdiction over telegraph corporations — franchise rights outside of territory designated in charter — power to compel one telegraph corporation to extend credit to another.**

The power of a telegraph corporation to extend credit for service is purely administrative, and is clearly within the scope of the powers conferred upon the board of directors by section 34 of the General Corporation Law, and is not abridged by anything in the Transportation Corporations Law.

The Public Service Commission does not have general supervisory powers over the business management and policy of a telegraph corporation, but only over those matters in which the public, as distinguished from the stockholders, have an interest.

The Public Service Commissions Law having specifically enumerated the powers of the Commission in reference to telegraph corporations, its power is limited to those specifically mentioned, for the enumeration of powers with respect to a particular subject-matter is a negation of all other analogous powers with respect to the same subject-matter.

Section 97 of the Public Service Commissions Law, providing, in effect, that whenever the Commission shall be of the opinion, after a hearing, that the rules, regulations or practices of any telegraph corporation affecting rates, charges, rentals or service are unjust, unreasonable or unjustly discriminatory or unduly preferential or in any way in violation of law, the Commission shall determine the just and reasonable rates, charges and rentals to be thereafter observed, does not authorize the Public Service Commission to fix, by order, the persons or corporations which shall be given credit by a telegraph corporation.

The giving or withholding of credit for the few days involved in the practical administration of telegraph companies is not such an "unjust, unreasonable or unjustly discriminatory or unduly preferential" practice as to have any appreciable effect upon the rates or service of those corporations.

A transportation or public service corporation has no franchise rights or authority outside of the territory designated in its charter; it is confined

to the " general route and the points to be connected," and it has no power to operate outside of the territory thus defined in its charter.

The Public Service Commission has no power to order the Western Union Telegraph Company to extend credit to the Postal Telegraph-Cable Company for charges on messages destined to points at which the Postal Telegraph-Cable Company has no office, and which that company may transfer to the Western Union Telegraph Company for transmission.

JOHN M. KELLOGG, P. J., and COCHRANE, J., dissent, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 15th day of January, 1920, directed to the Public Service Commission, Second District, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in requiring the Western Union Telegraph Company, on and after January 1, 1920, to discontinue its practice of requiring the Postal Telegraph-Cable Company to pay cash for the transmission of intrastate messages delivered by it to said Western Union Telegraph Company.

The opinion of the Public Service Commission is reported in *Postal Tel.-Cable Co.* v. *Western Union T. Co.* (21 State Dept. Rep. 653).

*Francis Raymond Stark* and *Ralph H. Overbaugh,* for the relator.

*Ledyard P. Hale,* for the respondent.

*John L. Farrell* and *William W. Cook,* for the intervenor.

WOODWARD, J.:

The Public Service Commission, Second District, has ordered: " That Western Union Telegraph Company shall, beginning January 1, 1920, discontinue its present practice of requiring Postal Telegraph-Cable Company to pay cash for such intrastate telegraph messages as shall be delivered to said Western Union Telegraph Company by Postal Telegraph-Cable Company for transmission, and shall in lieu thereof charge such messages to an account against Postal Telegraph-Cable Company which shall be rendered to said Postal Telegraph-Cable Company not more often than every thirty days; or in the case of the message being one for a person who is a charge

750 People ex rel. Western Union Tel. Co. *v.* P. S. Comm.

Third Department, July, 1920. [Vol. 192.

customer of the Western Union Telegraph Company, shall charge said message to said customer's account with the Western Union Telegraph Company."

The Western Union Telegraph Company has brought this writ of certiorari to determine the right and power of the Public Service Commission to thus intervene in its affairs, and urges that it is not called upon to provide facilities for ·the carrying on of the business policies of the Postal Telegraph-Cable Company beyond the strict letter of the statutes governing its conduct. It is evident from the discussion of the learned chairman of the Public Service Commission, and the attitude of the intervenor in its brief, that the order proceeds largely upon the theory that as the Western Union Telegraph Company had heretofore permitted a credit to the Postal Telegraph-Cable Company it was bound to continue this practice for the special convenience of that portion of the public which chose to file its messages with the Postal Telegraph-Cable Company, and the determination of this question requires that we recur to certain fundamental principles underlying corporate action.

The Public Service Commissions Law (Consol. Laws, chap. 48; Laws of 1910, chap. 480) does not purport to repeal any statutes subsequent to 1907 (chap. 429), and we may assume that the General Corporation Law, the Stock Corporation Law and other statutes contained in the general revision of 1909 are still in effect. These statutes, including the Public Service Commissions Law, belong to a group of enactments dealing with the creation, maintenance, management and control of corporations, and are to be con-strued with reference to the provisions found in each one of them. (*People ex rel. Haberman* v. *James,* 5 App. Div. 412.) We may not, by an interpretation of the broad general language of one of these enactments, override and control the particular provisions of another; they must all be read and harmonized into an intelligent and workable whole, preserving to the individual or corporation all of those rights which belong to it under the law of its being, and which are not inconsistent with the rights of the public as defined in the statutes, or as exist under the common law. The revisers of the statutes have placed in the General Corporation Law all the provisions

People ex rel. Western Union Tel. Co. *v.* P. S. Comm.    751

App. Div.]            Third Department, July, 1920.

which they deemed applicable to all classes of corporations (*Matter of Ringler & Co.*, 204 N. Y. 30, 40) and these are enumerated in section 2 of that act and include transportation corporations.

When we find in section 34 of the General Corporation Law (as amd. by Laws of 1917, chap. 538) that " the affairs of every corporation shall be managed by its board of directors," and that, with certain exceptions, " the directors may make necessary by-laws of the corporation," we are bound to give some effect to this language; we are bound to assume that it means something, and if the granting or withholding of credit is not an affair of a corporation, as distinguished from its duty to the public, then we are at a loss to know what would constitute an affair of a corporation. Almost every corporation transacting any considerable business has a credit department; it is necessary to the well-being of the corporation, the earning of dividends, that the credits should be intelligently handled. It is as important to give credit where the interests of the stockholders require it as it is to withhold it where these interests would be adversely affected, and these are matters which peculiarly belong to the board of directors. " Powers of those entrusted with corporate management are largely discretionary " and " courts will not interfere unless the powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders." (*Leslie* v. *Lorillard*, 110 N. Y. 519; *Burden* v. *Burden*, 159 id. 287, 307; *Schwab* v. *Potter Co.*, 194 id. 409, 415.)   In the latter case the court quotes from *Flynn* v. *Brooklyn City R. R. Co.* (158 N. Y. 493, 507) that " all questions within the scope of the corporate powers which relate to the policy of administration, to the expediency of proposed measures, or to the consideration of contracts, provided it is not so grossly inadequate as to be evidence of fraud, are beyond the province of the courts," and unless the Legislature in clear and direct terms has withdrawn from transportation corporations the rights which are declared to belong to the duties of the board of directors of " every corporation," we must reach the conclusion that the power attempted to be exercised by the Public Service Commission is without warrant in law.

The word " affairs " has been judicially declared to be a word of broad signification, more comprehensive than that of " business " (*Morrison* v. *Bachert*, 112 Penn. St. 322, 328), and in *Tompkins* v. *Little Rock, etc., R. R. Co.* (15 Fed. Rep. 6, 13) it was said that it was " a word of large import, and a receiver having the management ·of the affairs of a railroad company must necessarily have the control and management of its road." We see no reason why a telegraph company should not have the control and management of its lines, of all matters of expediency and of administrative policy, to the extent that this is not denied them by positive law. (*Great Northern Ry.* v. *Minnesota,* 238 U. S. 340, 346; *Chicago, Mil. & St. Paul R. R.* v. *Wisconsin,* Id. 491, 501.) On the provisions of section 34 of the General Corporation Law there is the unmistakable power to deal with the affairs of the corporation generally, and it is important to see whether this power has been limited to transportation corporations, to the extent that they may not determine for themselves the question of allowing credits.

We look in vain in the Transportation Corporations Law for any intimation that the affairs of such corporations are not within the control of their boards of directors, in so far as it relates to matters of business policy and administration. Section 103 of the Transportation Corporations Law provides that every telegraph and telephone corporation " shall receive dispatches from and for other telegraph or telephone lines or corporations, and from and for any individual, and on payment of the usual charges by individuals for transmitting dispatches as established by the rules and regulations of such corporation, transmit the same with impartiality and good faith and in the order in which they are received," etc. There is nothing here that assumes to take away the general powers of boards of directors over the administrative policy; to determine that all or any of the persons or corporations shall be given credit. That is a matter in which the public, as such, has no concern; it does not go to the question of fairness in rates nor quality or efficiency of the service. It is purely an administrative question, and is clearly within the scope of the powers conferred by section 34 of the General Corporation Law, and is not abridged by anything in the Transportation Corporations Law. The statute makes it the duty of the Western Union

Telegraph Company to receive dispatches from the Postal Telegraph-Cable Company, and to receive dispatches intended for it, in the same manner and to the same extent as it is the duty of the Western Union Telegraph Company to receive dispatches from and for any individual, but its duty to transmit dispatches from or for any of these corporations or individuals is made contingent upon the " payment of the usual charges," and an implied promise to pay in the future is clearly not a present payment.   There is no suggestion that the Western Union Telegraph Company has refused to receive or transmit messages from or for the Postal Telegraph-Cable Company upon its performing the condition precedent to the performance of this duty, but it is now commanded to perform this duty and to accept an implied promise to pay in lieu of the actual payment provided by the statute.   Whence comes the authority for this command?   Has the Public Service Commission, a creature of the Legislature, become superior to the law?   May it annul conditions which the Legislature has created?

Looking to the Public Service Commissions Law we find no delegation of power over the affairs of the corporation; over its discretion to determine upon its administrative policy, in the effort to earn dividends for its stockholders.   Subdivision 2 of section 94 (as added by Laws of 1910, chap. 673) provides, not that it shall take over the powers of boards of directors, but that it " shall have general supervision of all telegraph corporations, telephone corporations and telegraph lines and telephone lines within its jurisdiction as hereinbefore defined and shall have power to and shall examine the same and keep informed as to their general condition, their capitalization, their franchises and the manner in which their lines and property are leased, operated or managed, conducted and operated *with respect to the adequacy of and accommodation afforded by their service* and also with respect to the safety and security of their lines and property, and with respect to their compliance with all provisions of law, orders of the Commission, franchises and charter requirements."   It has these general supervisory powers, not over the business management and policy of the corporation, but over those matters in which the public, as distinguished from the stockholders, have an interest.

754   People ex rel. Western Union Tel. Co. *v.* P. S. Comm.

Third Department, July, 1920.        [Vol. 192.

It is " with respect to the adequacy of and accommodation afforded by their service," and " with respect to their compliance with all provisions of law " and matters of that character that the Public Service Commission is authorized to exercise " general supervision," and its only powers over the financial arrangements of telegraph corporations is to be found in section 101 (as added by Laws of 1910, chap. 673), dealing with the issuing of stocks, bonds and other forms of indebtedness, except as such Commission may supervise and control the reorganization of such corporations under section 101a of the Public Service Commissions Law (as added by Laws of 1912, chap. 289). The enumeration of certain powers with respect to a particular subject-matter is a negation of all other analogous powers with respect to the same subject-matter (*Ex parte McCardle*, 7 Wall. 506; *Tucker* v. *Alexandroff*, 183 U. S. 424, 436), and we may assume that if the Legislature had intended to deny to a transportation corporation the right to determine its own credits, or methods of collecting its income, it would have included it in specific language somewhere in the statutes.

It is true, of course, that it is provided in section 97 of the Public Service Commissions Law (as added by Laws of 1910, chap. 673) that " whenever the Commission shall be of opinion, after a hearing, had upon its own motion or upon a complaint that the rates, charges, tolls or rentals demanded, exacted, charged or collected by any telegraph corporation   *   *   *   for the transmission of messages or communications by telegraph *   *   *   or that the rules, regulations or practices of any telegraph corporation   *   *   *   *affecting such rates, charges, rentals or service* are unjust, unreasonable or unjustly discriminatory or unduly preferential or in any wise in violation of law, *   *   *   the Commission shall   *   *   *   determine the just and reasonable rates, charges and rentals to be thereafter observed and in force as the maximum to be charged, demanded, exacted or collected for the performance or rendering of the service specified and shall fix the same by order," etc., but this does not authorize the Public Service Commission to fix by order the persons or corporations which shall be given credit. The subsequent provisions of said section 97 do not seem to authorize the Commission to so order. (See, also, Laws of 1919, chap. 624, amdg. said § 97, subd. 3.) In view of the

broad language of section 34 of the General Corporation Law that " the affairs of every corporation *shall* be managed by its board of directors," can we find in the language quoted any authority for the Public Service Commission to determine the purely administrative question of what individuals or corporations shall be entitled to credit? Could it have been the purpose of the Legislature to open the way to every individual and corporation in the State of New York to appeal to the Public Service Commission whenever a telephone or telegraph corporation denied the same credit that was extended to some other individual or corporation? Obviously, if the Public Service Commission may be called upon to determine that the Western Union Telegraph Company shall extend credit upon particular terms to the Postal Telegraph-Cable Company, its powers may be invoked in behalf of every other corporation or individual, no matter what may be his or its responsibility; it must be prepared to pass upon the responsibility of parties, and to determine the policy of every telephone and telegraph corporation in the State. In short, the Public Service Commission, instead of devoting its attention to the rights of the public, must maintain a credit bureau, and accept the responsibility of determining how the internal affairs of telegraph companies shall be handled, and, logically, the State of New York should assume the duty of paying dividends, or at least the making good of losses due to improper granting of credits. The Legislature has said that the duty of controlling the affairs of corporations rests with the boards of directors; that telegraph corporations should receive and transmit messages on the payment of the rates fixed, and it has provided in the Public Service Commissions Law that the Commission might, under designated circumstances, determine these rates, but we find no suggestion that it may go further and determine that the telegraph company must perform the service upon an implied promise to pay for such service at some future date prescribed by the Commission. There is plenty of scope for the activities of even so virile a body as the Public Service Commission within the obvious meaning of the language used, without extending it to the nullification of the provisions vesting legitimate powers in the hands of boards of directors.

It certainly cannot be held with any degree of plausibility

that the giving or withholding of credit for the few days involved in the practical administration of telegraph companies is such an " unjust, unreasonable or unjustly discriminatory or unduly preferential " practice as to have any appreciable effect upon the rates or service of these corporations. The rates fixed by law are, under the provisions of section 103 of the Transportation Corporations Law, due before the duty of transmission attaches. If a thirty days' credit is to be extended then the corporation would have a right to exact interest from the due date, and it is a discrimination against those who pay cash on the due date to give the Postal Telegraph-Cable Company the extension of time without such compensation, but in the practical operation of business it is often of greater advantage to the corporation and its stockholders to extend the credit than to deal with the small daily transactions. In other words, this is distinctly one of the affairs of the corporation, with which the public has no concern, any more than it has with the same problem as presented to a manufacturing or other business corporation. What money is made or lost in the refusal or extension of credit is purely a business matter of the corporation, and it should not be interfered with in the absence of direct legislative authorization, such as is not to be found in any of the statutes to which our attention is directed.

The order of the Commission, and the theory of the Postal Telegraph-Cable Company, proceeds upon the proposition that where an individual or corporation delivers a message to the Postal Telegraph-Cable Company for delivery at a point where the latter corporation has no office it may deliver this message at the initial point to the Western Union Telegraph Company, and that this corporation is bound to transmit this message and to extend credit for the service for a period which may extend to thirty days, either to the Postal Telegraph-Cable Company or to the customer, if he happens to be a credit or charge customer of the Western Union Telegraph Company. In other words, the Postal Telegraph-Cable Company undertakes to act as the agent of persons and corporations delivering messages to it for transmission to territory within the State of New York where it has no office and no franchise to do business, and to compel the Western Union Telegraph Com-

Peoples ex rel. Western Union Tel. Co. *v.* P. S. Comm.   757

App. Div.]                      Third Department, July, 1920.

pany to carry the credit which it may or may not extend to its customer, although it is claimed that it does, in fact, pay over such cash as accompanies the transaction. This is claimed to result in an actual loss to the Postal Telegraph-Cable Company for the hiring of messengers to deliver the messages, but it appears to comport with the internal policy of that corporation to suffer this loss for the sake of keeping up the illusion that it is prepared to furnish a service in excess of its actual facilities or franchise rights, and it is one of the grievances of the Postal Telegraph-Cable Company that the Western Union Telegraph Company notifies these customers of the former that it is obliged to afford the transmission and delivery. Just why the Western Union Telegraph Company should be criticised for using ordinary business methods in protecting its vast investment in small rural communities by calling attention to the facilities which it offers to the public does not occur to us, and it is no part of the duty of the courts or other public bodies to participate in the disagreements of rival corporations.

Section 100 of the Transportation Corporations Law provides that seven or more persons may become a corporation for the purpose of constructing and maintaining and operating telegraph lines, upon making and filing a certificate " stating the name of the corporation; *its general route and the points to be connected,*" etc., and such a corporation, with the consent of the local authorities (*Matter of New York Independent Telephone Co.*, 133 App. Div. 635; 200 N. Y. 527) is authorized to place its poles and wires in the public streets and highways along this general route and within the points to be connected, and this legislative grant of corporate existence and the consent of the local authorities authorized to act in behalf of the State, constitutes " a single, indivisible franchise to construct and operate " a telegraph line in the territory designated. (*City of New York* v. *Bryan*, 196 N. Y. 158, 166.) It is well settled by authority in this State that a transportation or public service corporation has no franchise rights or authority outside of the territory designated in its charter; it is confined to the " general route and the points to be connected," and it has no power to operate outside of the territory thus defined in its charter. (*Schinzel* v. *Best*, 45 Misc. Rep. 455, 463, 465; *Hart*

758  People ex rel. Western Union Tel. Co. *v.* P. S. Comm.

Third Department, July, 1920. [Vol. 192.

v. *Mayor,* 16 App. Div. 227; *Central Crosstown R. R. Co.* v. *Metropolitan Street R. Co.,* Id. 229; *Richards* v. *Citizens' Water Supply Co.,* 140 id. 206; *Manhattan Bridge T.-C. Line* v. *Third Avenue R. Co.,* 154 id. 704; *Fanning* v. *Osborne,* 102 N. Y. 441; *Brooklyn Heights R. R. Co.* v. *City of Brooklyn,* 152 id. 244; *Delaware, L. & W. R. R. Co.* v. *City of Buffalo,* 158 id. 266, 478; *Hatfield* v. *Straus,* 189 id. 208; *City of Rochester* v. *R. & L. O. W. Co.,* Id. 323; *New York Central & H. R. R. R. Co.* v. *General Electric Co.,* 219 id. 227, 237.) As the acceptance of a franchise implies the execution of the conditions and duties prescribed in the grant (3 Kent Comm. [14th ed.] *458; *City of New York* v. *Bryan, supra,* 164) it may be presumed that the Postal Telegraph Cable Company has occupied all of the places where it is authorized by law to perform its functions, and it clearly is not authorized to accept business for places where it has no franchise. Nor is it authorized by anything in the corporation laws of this State to act as the agent for those persons who may desire to transmit messages to communities served only by the Western Union Telegraph Company. " Corporations," say the court in *Schwab* v. *Potter Co.* (194 N. Y. 409, 418), " cannot resort to ingenious and original methods of action with the freedom of individuals, for they are confined to those expressly authorized by statute and such as are incidental thereto and necessary to carry them into effect," and " Whatever is done by a corporation without authority is done in violation of law, for all action, not authorized directly or indirectly, is prohibited. (General Corporation Law [L. 1890, chap. 563, as amended], § 10.*)" No cause of action, or other legal right, " can arise from an undertaking prohibited by statute, whether the contract is *malum in se* or *malum prohibitum.*" (*Peck* v. *Burr,* 10 N. Y. 294, 299; *Village of Fort Edward* v. *Fish,* 156 id. 363, 373.) Of course, it is proper that the Postal Telegraph-Cable Company should accept a message in Albany to be delivered at some point where it has an office, and it is then the duty of the Western Union Telegraph Company, when called upon, to

---

* *Sic.* See Gen. Laws, chap. 35 (Laws of 1890, chap. 563), § 9; Gen. Laws, chap. 35 (Laws of 1892, chap. 687), § 10, as amd. by Laws of 1895, chap. 672; now Consol. Laws, chap. 23 (Laws of 1909, chap. 28), § 10.— [Rep.

complete a transmission begun by its rival, and upon the payment of the prescribed fees, to complete the service; that is a matter in which the public has an interest, and it was upon a recognition of this duty that *People ex rel. Western Union Telegraph Co.* v. *Public Service Commission* (160 App. Div. 144; 211 N. Y. 542) and *Matter of Postal Telegraph-Cable Company* (169 App. Div. 382) were decided, but that is not the problem presented here. The Public Service Commission has ordered that messages originating in Albany, we will assume, destined to non-competitive points, may be handed in at the Albany office of the Western Union Telegraph Company by the Postal Telegraph-Cable Company, and that it is not only the duty of the Western Union Telegraph Company to transmit these messages but that it must extend a credit to the Postal Telegraph Cable Company, to the end that the latter corporation, touching only the high spots in the commercial geography of the State, may be able to convey to its patrons the impression that it has the facilities which, under its charter, it does not possess. It is a fact of which the court may well take judicial notice that the Western Union Telegraph Company maintains offices in practically every community of commercial or industrial importance in the State of New York, in many instances where it is questionable whether the office is self-supporting; certainly where it would be impracticable to support a competing office. The Postal Telegraph-Cable Company, coming into the field at a much later day, and confining its franchise rights to the highly developed commercial centers, is now offering its services at a reduction of twenty per cent from that charged by the Western Union Telegraph Company, and, if it may carry on the practice which the order under review commands, it will be given all the advantages of the Western Union Telegraph Company's elaborate system in the fostering of its own business. This is not the duty the State of New York owes to its corporate creations; it is not the condition upon which they accepted their franchises. It is true, of course, that the Legislature reserves the right to alter and amend these franchises (Gen. Corp. Law, § 320; Const. art. 8, § 1), but it rests under the moral obligation to act in good faith with the incorporators who are discharging a public service, and until the Legislature in unmistakable language has authorized

**760** People ex rel. Western Union Tel. Co. *v.* P. S. Comm.

Third Department, July, 1920. [Vol. 192.]

such an invasion of the business policy of a public service corporation as is manifest in the present order, the courts will not presume that any such result was intended.

We are clearly of the opinion that it is not the duty of the Western Union Telegraph Company to afford facilities to its rival in the development of its purely business affairs; that it is not called upon to become a party to the deception of the public by the practice of taking care of the Postal Telegraph-Cable Company's business upon the basis of financing the credits of that corporation to its customers. The Western Union Telegraph Company has a right to the prestige of its highly developed service in the promotion of its own business; that is the fair interpretation of the mutual agreement growing out of the granting and acceptance of a franchise from the sovereign power. It has a right to have the public understand the true situation, and not to have it obscured by a system which permits the customer to understand that the Postal Telegraph-Cable Company is performing a service which it has no lawful right to perform for the reason that it has no franchise right to deliver messages in territory which it does not occupy. The territory covered exclusively by the Western Union Telegraph Company belongs to it to serve; it alone has the right to conduct a telegraph business in that particular territory, and when the Postal Telegraph-Cable Company, under the provisions of the order here under consideration, holds itself out as performing this service it is acting without warrant of law. It is probably impracticable to say that the Western Union Telegraph Company might refuse to perform this service for the customers of the Postal Telegraph-Cable Company; it probably owes the duty, on compliance with the provisions of the statute, to forward any message delivered to it, but there is no reason why it should be called upon to promote the business interests of its rival by enabling that corporation to appear as serving a territory which it cannot reach lawfully. The system of accounting provided for in the order is admirably adapted to deceive and to give to the Postal Telegraph-Cable Company the advantages which belong to the chartered rights of the Western Union Telegraph Company, and the fact that the latter has, in times past, submitted to the imposition upon its just rights is not a reason for com-

pelling it to continue, upon the flimsy pretext that the rights of the public are involved. No man or corporation has a lawful right to demand the sending of a message without the present payment of the established fee. If, for its own purposes in the fostering of its own business affairs, the Western Union Telegraph Company waives this right in behalf of such customers as it may choose, this does not operate to give rights to a rival corporation to extend to its own customers the privileges which belong only to the Western Union Telegraph Company. The people who patronize the Postal Telegraph-Cable Company, and who might be accommodated by having that company act as its errand boy in delivering messages for non-competing points to the Western Union Telegraph Company at the point of origin, do not constitute " the public " in any proper sense. The Postal Telegraph-Cable Company owes them no chartered duty in respect to messages outside of its own designated territory (*Great Northern Railway Company* v. *Cahill,* 253 U. S. 71, decided by United States Supreme Court May 17, 1920), and the language of section 10 of the General Corporation Law is that " no corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given." The individual customer of the Postal Telegraph-Cable Company, if he desired to send a message into Western Union Telegraph Company territory, could avail himself of the Western Union messenger service quite as readily as that of the rival corporation, and he would be entitled to the resources of that company and to such accommodations as the business policy of the Western Union Telegraph Company might dictate, but at law he could only have the right to such service upon the payment of the established fee. Under the order complained of a party who had, by his misconduct, forfeited the privilege of credit with the Western Union Telegraph Company could be given this privilege through the intervention of a rival corporation, and thus the management of the affairs of the Western Union Telegraph Company would be taken from its own directors to this extent and placed in the control of the directors of the Postal Telegraph-Cable Company, a result so at war with the language and the spirit of the corporation system of the State of New York

**762** PEOPLE EX REL. WESTERN UNION TEL. CO. *v.* P. S. COMM.

Third Department, July, 1920.          [Vol. 192.

that it cannot rest upon any foundation less certain than direct language in a legislative enactment.

The writ of certiorari should be sustained, and the order of the Public Service Commission reversed, and the proceeding be dismissed.

All concur, except JOHN M. KELLOGG, P. J., dissenting, with an opinion in which COCHRANE, J., concurs.

JOHN M. KELLOGG, P. J. (dissenting):

Section 103 of the Transportation Corporations Law requires one company to receive and transmit dispatches from and for another company and from and for individuals upon payment of the cash rates. It is I think conceded that under this section the Postal Company is entitled to have its dispatches transmitted by the Western Union if cash is paid therefor. The same section, however, requires that all dispatches shall be transmitted with impartiality, and the laws governing common carriers and the Public Service Commissions Law require a like service on equal terms, under like conditions. Apparently credit is given for the majority of dispatches sent by either company, and that fact gives to the Postal Company the right to require that dispatches delivered by it to the Western Union shall be received by it and transmitted and charged to the Postal Company. For a great many years the companies have exchanged business on substantially the terms mentioned in the order now under review. Each company had substantially the same rates. But when the government released to the companies the operations of their lines, about August 1, 1919, the Postal Company reduced its rates twenty per cent, while the Western Union discontinued the practice of receiving dispatches and charging the same under the old plan. It claims that by reason of the difference in the rates, misunderstandings and frictions will grow up, especially if it is required to render bills to individuals for dispatches delivered to it by the Postal Company. The Public Service Commission is not all powerful. So far as we are now interested in it, it can require an equal service on equal terms to all. It does not appear, as I understand it, that the Western Union is now receiving dispatches from other companies under similar

circumstances and charging them, not to that company, but to that company's customers. There seems to be no public necessity for such a requirement. It is a question in which the companies alone are interested. A common carrier, by generally granting credit to responsible customers, may be compelled, under like circumstances, to grant credit to another responsible party. It cannot refuse credit solely because a person is a rival in business, or for other personal reasons. Under the statute it has the right to insist upon payment in cash from all. The Western Union has established no credit system which would justify the Commission to require it to give credit to others for the business furnished by them to the Postal Company. The sender of the dispatch and the Postal Company, for their own reasons, have agreed that the company will send the dispatch on credit. There is no good reason why the Postal Company can require the Western Union Company to accept its place and furnish the credit. It is attempting to throw an unreasonable burden upon its rival. In my judgment it is unreasonable, and there is no law permitting the Postal Company to force upon the Western Union a credit account with a third person without that person's consent.

I favor a modification of the order by striking therefrom the words " or in the case of the message being one for a person who is a charge customer of the Western Union Telegraph Company, shall charge said message to said customer's account with the Western Union Telegraph Company," and, as so modified, it should be affirmed, without costs.

COCHRANE, J., concurs.

Writ sustained and determination of the Public Service Commission reversed and proceeding dismissed, with fifty dollars costs and disbursements.