THE CITY OF NEW YORK, Appellant, *v.* THE NEW YORK
CENTRAL RAILROAD COMPANY, Respondent.

**Ejectment — railroads — New York (city of) — action to
recover possession of a strip of land occupied and used by the
defendant, as part of its railroad, from Seventy-second street
to Spuyten Duyvil creek — railroad constructed, and operated,
under franchise from state with approval of city and under
such franchise and consent defendant entitled to undisturbed
possession of the land within streets and avenues now occupied
by its railroad — defendant has title to lands of right of way
not within limits of streets or avenues either as the result of
adverse possession or under a perpetual easement by virtue
of prescription.**

1. Where the legislature by chapter 216 of the Laws of ·1846
granted a charter to the Hudson River Railroad Company and gave
it authority to construct and maintain a line of railroad along the
east shore of the Hudson river between the cities of New York and
Albany and provided that the line of the railroad might be located
" on any of the streets or avenues of the city of New York, westerly
of and including the Eighth Avenue and on or westerly of Hudson
Street, provided the assent of the corporation of said city be first
obtained for such location," the city owning and having title to all
of the land in the streets and avenues in question under patents and
grants from the colonial government and the legislature (Dongan
Charter 1686; Montgomerie Charter 1732; L. 1807, ch. 115; L. 1826,
ch. 58) and the common council of the city by resolution duly approved
by the mayor in May, 1847, having granted consent to the railroad
company to construct its road " along the Hudson River from Spuyten
Duyvil Creek to near Sixty-eighth Street, occupying so much of the
Twelfth Avenue as lies along the shore " between said points, such
consent did not operate as a grant of the land described therein, but
was limited to occupancy of the same for railroad purposes and
became a component part of the franchise of said company under the
act of 1846 and inseparable therefrom so long as the charter of said
company or its successor company remains unrepealed by the legisla-
ture or annulled by judicial determination.    The consent of the city
is, therefore, irrevocable by the municipality.

2. The railroad company entered upon the lands of the city and
constructed, and has maintained and operated, its road thereon under

8

such franchise, an integral part of which was the consent of the city, and has since occupied such streets under such franchise; under such circumstances, it could not acquire title to the streets by adverse possession or a prescriptive right therein. Neither is the city estopped from asserting a claim of ownership of said streets traversed by the railroad company, notwithstanding it is denied a right to the possession of the same so long as the franchise of the railroad company is in full force and effect.

3. So far as the subject of litigation in this action is land once belonging to the city not within the limits of a street or avenue, the evidence establishes the defendant's title either to the fee as the result of adverse possession or to a perpetual easement by virtue of prescription. (*N. Y. C. & H. R. R. R. Co.* v. *City of New York*, 202 N. Y. 212, explained.)

*City of New York* v. *New York Central R. R. Co*, 198 App. Div. 517, affirmed.

(Argued May 2, 1922; decided July 12, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 21, 1921, unanimously affirming a judgment in favor of defendant entered upon a verdict directed by the court.

*John P. O'Brien,* Corporation Counsel (*J. Bleecker Miller* of counsel), for appellant. The plaintiff is not estopped from asserting title to the lands in question. (*City of New York* v. *N. Y. C. & H. R. R. R. Co.,* 69 Hun, 337; 147 N. Y. 710; *Clark* v. *City of Des Moines,* 19 Iowa, 199; *City of Mount Vernon* v. *N. Y., N. H. & H. R. R. Co.,* 232 N. Y. 309; *Town of Mt. Pleasant* v. *City of New York,* 199 App. Div. 315.) Neither the upland owners, nor their grantee, the Hudson River Railroad Company, nor its successors in occupation, have by filling in the city's lands under water, acquired any title to them, neither did they originally have any rights over the city's land under water which justified any use of the foreshore other than access to the upland by water. (*Nevins* v. *Friedauer,* 198 App. Div. 250;

*Hedges* v. *West Shore R. R. Co.*, 150 N. Y. 150; *Pine* v. *N. Y. City*, 185 U. S. 93; *Penryhn Slate Co.* v. *Granville E. L. & P. Co.*, 181 N. Y. 80.) Defendant has obtained no title by adverse possession. (*People ex rel. N. Y. C. R. R. Co.* v. *Priest*, 206 N. Y. 274; *Conselyea* v. *Van Dorn*, 120 App. Div. 520; *Matter of City of New York* v. *Thebaud*, 228 N. Y. 140; *Knapp* v. *City of New York*, 140 App. Div. 289; *Danes* v. *State*, 219 N. Y. 67; *Donahue* v. *State*, 112 N. Y. 142; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 579.)

*Alex. S. Lyman* for respondent. The plaintiff by its own conduct is estopped from maintaining this action. (*N. Y. Rubber Co.* v. *Rothery*, 107 N. Y. 315; *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Brown* v. *Bowers*, 30 N. Y. 519; *Shapley* v. *Abbott*, 42 N. Y. 443; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221; *Trustees of Brookhaven* v. *Smith*, 118 N. Y. 634; *Thompson* v. *Simpson*, 128 N. Y. 270; *Knox* v. *Met. El. Ry. Co.*, 58 Hun, 517; 128 N. Y. 625; *Crocker* v. *Manhattan Life Ins. Co.*, 61 App. Div. 226; *Corning* v. *Troy Iron & Nail Factory*, 44 N. Y. 577; *Rowan* v. *Kelsey*, 2 Keyes, 594; *Corkhill* v. *Landers*, 44 Barb. 218.) The city acquired no such title as enables it to maintain this action by the various proceedings to open streets along or across the strip of land in question. (*Matter of City of Buffalo*, 68 N. Y. 167; *Matter of City of New York* (*Saratoga Ave.*), 226 N. Y. 128; *Matter of City of New York* (*Newport Ave.*), 218 N. Y. 274; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113; *Matter of Mayor* (*161st St.*), 52 Misc. Rep. 596; 135 App. Div. 912; 198 N. Y. 606; *Suburban R. T. Co.* v. *Mayor, etc.*, 128 N. Y. 510; *Pappenheim* v. *Met. El. Ry. Co.*, 128 N. Y. 443; *Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 84 Misc. Rep. 606; 163 App. Div. 475; 215 N. Y. 268; *Wilson* v. *N. Y. C. R. R. Co.*, 146 N. Y. Supp. 208; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest*, 206 N. Y. 274.) The appellant

failed to show title or possession within twenty years prior to the commencement of the action, and the company proved without dispute adverse possession under color of written conveyance by an unbroken possession and physical occupation for about seventy years prior to the commencement of the action. (*Ward* v. *Hasbrouck*, 169 N. Y. 407; *Marvin* v. *Universal Life Ins. Co.*, 85 N. Y. 278; *Whitney* v. *New York, N. H. & H. R. R. Co.*, 102 Fed. Rep. 850; *Currier* v. *Trustees of Dartmouth College*, 117 Fed. Rep. 44; *Bank of Havelock* v. *Western Union Tel. Co.*, 145 Fed. Rep. 522; *Pierson* v. *New York, S. & W. R. Co.*, 83 N. J. L. 661; *Tobin* v. *McKinney*, 14 S. D. 52; *Stuch* v. *Town*, 178 Mich. 477; *Dungan* v. *Iowa Cent. Ry. Co.*, 96 Iowa, 161; *Greenleaf* v. *B., F. & C. I. R. R. Co.*, 132 N. Y. 408.)

HOGAN, J. The complaint in this action alleged that plaintiff was seized in fee and entitled to the immediate possession of all that certain strip of land in the borough of Manhattan, city of New York, sixty-six feet more or less in width, along or near the shore of the Hudson river, extending from Spuyten Duyvil creek on the north to the southerly line of Seventy-second street on the south, shown on the map of the route or roadway of the Hudson River Railway Company filed by said company in the office of the register of the county of New York, September 2d, 1847, and occupied by a double track with turnouts, etc.; that the defendant was in occupation of said land and wrongfully and unlawfully withholds possession thereof from the plaintiff. The relief sought was a judgment for the immediate possession of the premises in question.

At Trial Term, at the close of the evidence, the defendant moved for a direction of a verdict, which was granted by the trial justice. Upon appeal to the Appellate Division the judgment entered upon the verdict directed at the Trial Term was unanimously affirmed. By per-

mission of the Appellate Division plaintiff appeals to this court.

The relief prayed for in the complaint as stated was possession of the property. Upon the trial the procedure adopted partook primarily of the nature of an action to try the title to real estate. Numerous deeds, muniments of title, maps and documents relating to land within or adjacent to the roadbed of defendant's road were received in evidence. The trial justice declined to pass upon the question of title to the land in controversy. The views entertained by him as to the disposition of the action rendered the question of title immaterial. A reference to the grounds urged by counsel for defendant for a direction of a verdict will present the basis not only of the decision of the trial justice but of the Appellate Division. Four several propositions were advanced by counsel for defendant:

(a) That the evidence established plaintiff had not seizin or possession of the premises described in the complaint nor of any portion thereof within twenty years prior to the commencement of this action of a nature or quality to enable it to maintain the action.

(b) That the evidence established that defendant had proved ownership and right of possession in itself of said premises by written muniments of title and by adverse possession accompanied by actual occupation, which right of possession under such ownership had not been defeated or impaired as to the portions of the premises described in the complaint affected by street opening proceedings in evidence.

The motion so far as based on the foregoing stated grounds was denied.

(c) That so far as premises described in the complaint are occupied by public streets or avenues, the plaintiff is permanently enjoined from removing or attempting to remove any of the tracks, etc., located therein, and that it had been adjudged in an action between plaintiff

and defendant's predecessor in title that under its charter and an ordinance of the city of New York, approved May 6, 1847, defendant was entitled to use and occupy such portion of said streets and avenues for railroad purposes.

(d) Upon evidentiary facts (stated at too great length to admit of repetition, some of which will be considered hereafter) by reason of which defendant asserted that plaintiff was equitably estopped from maintaining the action.    For the reasons urged " c " and " d," the trial justice directed a verdict for defendant.

The Appellate Division approved the reasons adopted by the trial justice and further held that as to property held by the city under the Dongan charter, occupied by defendant, the latter had good title by adverse possession.

In 1686 Governor Dongan granted to the city of New York, at that time a municipal corporation, " all the waste, vacant, unpatented and unappropriated lands lying and being within the City of New York and on Manhattan's Island aforesaid extending and reaching to low water mark in, by and through all parts of the said City of New York and Manhattan's Island aforesaid."  Such grant was thereafter confirmed by the Montgomerie charter of 1732.

By chapter 115 of the Laws of 1807 commissioners were appointed to lay out streets and avenues in the city of New York.  Maps were to be made and filed as therein provided, and it was declared that the plans and surveys " in respect to the laying out of streets and roads within the boundaries aforesaid, and the maps of the same, so to be made by them, or any two of them, as aforesaid, shall be final and conclusive, as well in respect to the said mayor, aldermen and commonalty as in respect to the owners and occupants of lands, tenements and hereditaments within the boundaries aforesaid, and in respect to all other persons whomsoever."

The statute further provided:

" Be it therefore further enacted, That it shall and may be lawful for the commissioners of the land

office, and they are hereby directed to issue letters patent, granting to the mayor, aldermen and commonalty of the city of New York, and their successors for ever, all the right and title of the people of this state, to the lands covered with water, along the easterly shore of the North or Hudson river, contiguous to and adjoining the lands of the said mayor, aldermen and commonalty, within the said city of New York, at and from low water mark, and running four hundred feet into the said river from Bestaver's Killetje or river, to the distance of four miles to north along the easterly shore of the said North or Hudson river    *   *   *."

The commissioners appointed under the statute of 1807 were required to cause three separate maps of such streets and roads to be laid out by them as aforesaid and of the shores bounding the lands by them surveyed to be made and filed. They proceeded with the duty imposed upon them, laid out streets and avenues, delineated the same upon the maps, and included streets some of which were in whole or in part under water.

Pursuant to the provision of the statute of 1807, the commissioners of the land office on December 26, 1807, by letters patent in the name of the People of the State of New York, granted to the mayor, aldermen and commonalty of the city of New York the lands and right specified in the act of 1807, and indicated upon the maps made by the commissioners. By chapter 58, Laws of 1826, the commissioners of the land office were directed to grant to the city of New York lands covered with water along the easterly shore of the North or Hudson's river, contiguous to and adjoining the lands of the city of New York, at and from low-water mark, and running four hundred feet into the said river, from a point on the easterly shore of said river, four miles north from Bestaver's Killitje, and extending therefrom north along the easterly shore of said river to Spuyten Duyvil creek. " PROVIDED ALWAYS, that the proprietor or proprietors

of the lands adjacent, shall have the pre-emptive right in all grants made by the corporation of the said city, of any lands under water granted to the said corporation by this act." A like clause was also embodied in the statute of 1807. Pursuant to the statute of 1826 the commissioners of the land office on March 26, 1826, by letters patent in the name of the People granted to the city of New York the lands and premises generally described in the statute.

February 22, 1844, an ordinance was adopted by the common council of the city of New York and approved. The ordinance provided that power and authority to convey any interest in lands under water or elsewhere in said city should be vested in the sinking fund commissioners. Thereafter such action was ratified by the legislature (Laws of 1845, chapter 225).

Various other statutes are cited in the briefs of counsel to which reference is not deemed essential. The foregoing statement we consider ample for the purposes of this appeal, as the same in a general way disclosed the status of the city in 1846 when the Hudson River Railroad Company was organized by chapter 216, Laws of 1846, for a period of fifty years with authority to construct and maintain a line of railroad along the east shore of the Hudson river between the cities of New York and Albany. The statute provided that the line of the railroad might be located " on any of the streets or avenues of the city of New York, westerly of and including the Eighth avenue and on or westerly of Hudson-street, provided the assent of the corporation of said city be first obtained for such location."

Early in 1847, the Hudson River Railroad Company applied to the common council of the city for the consent contemplated by the statute of 1846 and a determination of the route of the railroad company upon Manhattan Island. The common council appointed a committee to consider the application. A report was thereafter made

by the committee to the common council which indicated that two routes had been considered, one along Eighth avenue and one along the river front, that hearings had been afforded the public, etc., and thereafter the committee reported in favor of the route along the river front. The report of the committee was adopted by the common council and approved by the mayor of the city May 6th, 1847. The route prescribed, so far as material, reads: " Permission is hereby granted to the Hudson River Rail Road Company to construct a double track of rails with suitable turnouts along the line of the Hudson River from Spuyten Duyvil Creek to near Sixty-Eighth street, occupying so much of the Twelfth avenue as lies along the shore, thence  *  *  *." The consent embodied provisions as to the duty of the railroad company relating to paving and repair of streets through which its tracks should be laid, to conform to the direction of the street commissioner in laying rail track; to construct bridges across streets intersected by the railroad when necessary or required, etc., and to file a map showing the intended grade of the railroad and its location.

Work of construction having been completed by the Hudson River Railroad Company in 1851, operation of the road by that corporation commenced and continued down to 1869 when the company, pursuant to statutes relating thereto, consolidated with the New York Central Railroad Company, the charter term of existence of the last named company having been fixed at five hundred years. Subsequently, a consolidation was perfected between the New York Central Railroad Company and several railroad companies operating in other states, since which consolidation defendant has continued the operation of a railroad from the city of New York to its terminal in a western state.

For the purposes of this case and to clarify our views we shall assume, without deciding, that the grant to the city of New York by Governor Dongan in 1686 embraced

and described lands running along the easterly shore of the Hudson river, and that the legislature by the statutes of 1807 and 1826 recognized that fact when it provided by the language employed in the statutes for grants of additional lands extending into the river, particularly in view of the general law in force at that time prohibiting a grant of land under water to other than the owner of the adjoining upland, that so far as pre-emptive rights referred to in the statutes of 1807–1826, we decided in *Mayor, etc., of the City of New York* v. *Hart* (95 N. Y. 443) that such rights were reserved only to grants to be made by the city, that subsequent to 1845 the sinking fund commissioners was the only commission or body authorized by the legislature to grant property under water or elsewhere in the city of New York in the name of the city, and that defendant at no time received a conveyance from the sinking fund commissioners.

Chronologically, we reach the year 1846, when by chapter 216 of the Laws of 1846 the Hudson River Railroad Company obtained its charter as a corporate body. The phraseology of that statute enlarges the general presumption that the legislative body of 1846 had knowledge of the existing legislation relating to the city of New York and in particular the statute of 1807 appointing commissioners to lay out and plat upon maps the streets and avenues of said city. The commissioners performed the duty assigned them and one of the maps made by them was filed in the office of the secretary of state and thereby the streets and avenues so laid out and platted under legislative sanction became highways devoted to a public purpose. Amongst said streets so laid out was Twelfth avenue.

In 1846 the legislature was clothed with power to authorize the railroad company to construct its roadbed upon or through the streets of the city, irrespective of consent by the municipal authorities. Such power was not exercised. On the contrary, the statute specifically

limited the streets or avenues upon which the route of the proposed road should be constructed to that portion of the city westerly of and including the Eighth avenue, which embraces the premises in question here involved. Further, it provided that as a prerequisite to the use or occupancy of any such streets the consent of the city thereto should be obtained.

That such requirement was an exercise of prudence cannot be questioned when the conditions existing at that period are considered. In 1846 the population of the city was approximately five hundred thousand spread over the area between the Hudson and East rivers south of Fifty-first street and Battery Park on the south. The city was an active seaport city bounded upon three sides by navigable waters and through the Hudson river in direct communication with the Erie canal. With a population as stated, business and residences confined to a limited area and future anticipated extension and growth in population, the proposition to locate the roadbed of a steam railroad upon the streets of the city above and below Sixty-eighth street was one which required serious consideration notwithstanding that the city welcomed the advent of the Hudson River Railroad Company.

Application having been made by the railroad company for consent of the city, the committee appointed to consider the same held meetings to which the public were invited. At such meetings a diversity of opinion existed as to the route to be selected; finally, after report was made by the committee, the common council by resolution granted consent to the railroad company to *construct its road along the Hudson river from Spuyten Duyvil creek to near Sixty-eighth street and to occupy Twelfth avenue as lies along the shore between said points.*

The consent thus granted did not partake or operate as a grant of the land described therein. Had the common council directly or indirectly attempted to make a grant of such lands, its action would have been *ultra*

*vires* as the legislature had theretofore conferred upon the sinking fund commissioners exclusive authority to grant land under water or elsewhere in said city.

I have characterized the consent of the city as prerequisite to the right of the railroad company to locate its roadway upon the streets or avenues of the city in view of the requirement in its charter and the evident fact that in the event of a refusal on the part of the city to consent to such occupation of its streets, in the absence of further legislation, the railroad company would be excluded therefrom. The consent of the city to occupy its streets having been obtained became a component part of the franchise granted the railroad company under the act of 1846 and inseparable therefrom so long as the charter of said company or the consolidated company remains unrepealed by the legislature. Unless a forfeiture of the charter of the railroad company is decreed by the legislature or by judicial determination the consent of the city is irrevocable by the municipality.

The railroad company entered upon the lands of the city and constructed, maintained and operated its road thereon under a franchise, an integral part of which was the consent of the city, and has since occupied such streets under such franchise. Under such circumstances it could not acquire title to the streets by adverse possession or a prescriptive right therein. Neither is the city estopped from asserting a claim of ownership of said streets traversed by the railroad company, notwithstanding it is denied a right to the possession of the same for the reason stated.

Stress has been placed upon our decision in the case of *N. Y. C. & H. R. R. R. Co.* v. *City of New York* (202 N. Y. 212) as establishing *res adjudicata* the rights of the parties in this action. In that case the city served notice on the railroad company to remove its tracks from certain avenues. Defendant procured a judgment enjoining the city from removal of its tracks. The

fundamental question in that case was the claim of the city that the duration of the franchise granted the Hudson River Company was limited to fifty years and that term having expired the consolidated company could not continue occupation of the streets. We held that the duration of the franchise to the Hudson River Company was limited merely to the corporate existence of that company and not to the location of its tracks in the street; that upon the consolidation of the Hudson River Company and defendant in 1869, by virtue of the provisions of the General Railroad Law the New York Central Company became vested with the franchise rights of the Hudson River Company for the term of the existence of the New York Central Company unless sooner terminated by the legislature, that the city had no authority to withdraw the franchise which had proceeded from the state the city having consented thereto. That decision is not in conflict with the views herein expressed. Clearly it cannot be held *res adjudicata* as to the effect of the consent of the city in the event of forfeiture or annulment of the charter of defendant. The opinion in that case tends to confirm, rather than to conflict with, the views herein expressed.

So far as the subject of litigation is land once belonging to the city not within the limits of a street or avenue, we think it is enough to say that the evidence establishes the defendant's title either to the fee as the result of adverse possession or to a perpetual easement by virtue of prescription. Choice between the two forms of title is unnecessary for the determination of the controversy now before us.

For the reason herein stated the judgment should be affirmed, with costs.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment affirmed.