■ TOWN OF GUILDERLAND, Respondent-Appellant, v. ERNEST SWANSON et al., Appellants-Respondents.— GIBSON, P. J. Cross appeals from a judgment

of the Supreme Court at Trial Term, entered upon a decision, which, in an action to enjoin a continuing trespass (1) adjudged that plaintiff municipality has title to the lands lying under the waters of the so-called Mill Pond, over which defendants have constructed a causeway from the north side of the highway known as U. S. Route 20 northerly to lands owned by them; (2) awarded nominal damages of $1; and (3) while recognizing defendants' continuing trespass, denied the injunctive relief sought by plaintiff to require defendants to remove the causeway. The primary issue is the ownership of the bed of the pond, which adjoins defendants' lands on the north and lands of plaintiff on the south, plaintiff's land being, historically, the "Mill Lot". One John M. Batterman, having become the owner of both properties, including, as will be shown, the land under the waters of the pond (the latter being described in an 1875 deed to Batterman as "all the land under water at high water mark in the Mill Pond"), on March 29, 1881 executed a mortgage of the mill lot of 1.8 acres. The mortgage contained the same description as that employed in 1841 when the lot came to Batterman by virtue of a partition suit, the metes and bounds description being followed, in the mortgage, by this language: "Containing about One and 8/10 acres of land, with the appurtenances, easements and right to raise the dam and all the Estate title and interest of the said party of the first part therein *and to all water and land under water appurtenant to the premises herein described*"; the language here italicized being an addition to the original description and appearing in the chain of title for the first time. The mortgage was foreclosed and a Referee's deed given and in certain deeds in the subsequent chain of title, including and ending with the 1954 deed to plaintiff, the description was expanded by language expressly "including in said tract the Mill Pond and Dam". Defendants assert, of course, that such purported inclusion was without legal basis or justification and was on that account ineffectual. Defendants' title also derives from Batterman, who in 1876 conveyed to defendants' predecessor in title the land "between the two branches of the said Mill Pond", but described its water boundaries in terms of the "bank" of the pond and the "water's edge". The property eventually came to defendants by a 1960 deed which similarly described the boundaries here pertinent. Defendants do not expressly claim title to any part of the bed of the pond; but they do assert that certain deeds executed by Batterman's predecessor in title, one Spawn, referred to the pond as a boundary, with the legal effect of conveying to the thread of the pond and, therefore, "that the deed from Spawn to Batterman could not have conveyed fee title to lands under the pond north of Route 20 (Cherry Valley Turnpike) as Spawn had previously conveyed the fee of much of said lands." The parties are in general agreement as to the principle involved, which within recent years has been reiterated thus: "The early New York cases of *Luce* v. *Carley* (24 Wend. 451, 453 [1840]) and *Child* v. *Starr* (4 Hill 369, 373 [1842]) restate the holdings of the English cases and texts that a grant runs to the middle of a river when the granted land in terms touches the water and when there is no express inclusion or exclusion of the bed. But the modern-day New York rule of *Fulton Light, Heat & Power Co.* v. *State of New York* [200 N. Y. 400] and *White* v. *Knickerbocker Ice Co.* [254 N. Y. 152] (*supra*) is a formulization and formalized statement of that same old rule. All the cases mean this: that a grant of the stream bed is ordinarily presumed (see *Stewart* v. *Turney*, 237 N. Y. 117, 121, 127) but that running a boundary line along the bank of the stream results in an exclusion of the land under water." (*People* v. *System Props.*, 2 N Y 2d 330, 341–342.) In this case, the facts are that Spawn's conveyances were by metes and bounds and by references to the "side" of the pond, the "water's edge" and courses "along" said pond; and even these

isolated uses of " along ", when read in context and as part of the entire, reasonably precise descriptions, afford no basis for defendants' contentions. Significantly enough, the description of the Killmer parcel carved from Spawn's holdings and later passing from Kelly to Batterman in 1875 and ultimately to defendants, being the upland to which the causeway became connected, clearly excluded the bed of the pond; and there is no indication whatsoever that any part of the pond bed later constituting or adjacent to the causeway site was conveyed by Spawn prior to his specific conveyance of the pond to Batterman in 1875. We turn then to the issue of plaintiff's title; and find that Special Term correctly concluded that the hereinbefore quoted language of the Batterman-VanSchaick mortgage, subsequently foreclosed, was intended to and did include the pond bed. Otherwise, the language would be without meaning. Contrary to appellants' contention, and to the general rule, land may pass as " appurtenant " to land, provided the parties so intend (*Carpenter* v. *Sickles,* 13 Misc 2d 1025, 1030, REYNOLDS, J.) ; and a recognized exception to the general rule relates to land under water, which will " pass under the word ' appurtenant ;' but if it [is] upland, it must be within the bounds of the description " (*Matter of City of New York [Eastern Blvd.],* 230 App. Div. 52, 55, per FINCH, J.; and see *Archibald* v. *New York Cent. & Hudson Riv. R. R. Co.,* 157 N. Y. 574, 579). Upon its cross appeal, plaintiff town mistakenly asserts that it is entitled, as a matter of law, to a mandatory injunction requiring defendants to remove the causeway. The trial court properly held that the " acts of the officers of the Town of Guilderland enticed and encouraged the defendants to construct such causeway and this being a court of equity the court denies the relief of a judgment for mandatory injunction compelling the defendants to remove the causeway and in lieu thereof awards the Town of Guilderland damages of one dollar ($1.00) for the trespass and construction of the causeway." The town proved no monetary damage and to that extent the nominal award was warranted. Before proceeding with the project, defendants obtained the permission of the town's Supervisor — which was apparently given and received in good faith and without knowledge at the time that it was legally ineffectual — and at his suggestion obtained a permit from the State. During construction, conferences were held at different times by defendants and their contractor with the Supervisor and other town officers; they and members of the Town Board from time to time observed the progress of the work, proceeding, as it did, at great expense; and no objection to the construction of the causeway was ever interposed by any of them until two and one-half years after its completion. Such acts and such omissions to act or to object might, on the part of individuals, well give rise to a complete estoppel; but, in the case of the municipality this result would not, of course, obtain, with the effect of conferring or conveying title or other rights otherwise than as authorized by statute in the case of a town's real property. (Town Law, § 64; *Solow* v. *City of New York,* 25 A D 2d 442; *Harway Improvement Co.* v. *Partridge,* 203 App. Div. 174, affd. 236 N. Y. 563, and connected case *Harway Improvement Co.* v. *City of New York,* 113 Misc. 788; *Matter of Rhinehart* v. *Redfield,* 93 App. Div. 410, affd. 179 N. Y. 569; 21 N. Y. Jur., Estoppel, §§ 81, 84; and cf. *City of New York* v. *New York Cent. R. R. Co.,* 198 App. Div. 517, affd. 234 N. Y. 113; 21 N. Y. Jur., *op. cit.,* § 79.) Nevertheless, a complete estoppel is not essential to support the court's denial of the equitable relief sought and consideration may be given the equities demonstrated to exist in defendants' favor. (Cf. *Solow* v. *City of New York, supra,* p. 444.) Here, the plaintiff has not sustained its burden of showing irreparable injury (*Kane* v. *Walsh,* 295 N. Y. 198; *Meyer* v. *Phillips,* 97 N. Y. 485); nor has it demonstrated either an excuse for its laches or its entitlement to mandatory injunctive

relief in consonance with the "balance of convenience" principle (see 28 N. Y. Jur., Injunctions, §§ 49, 45) under which, indeed, the facts seem to weigh in defendants' favor. The court's discretion was soundly exercised. (*Lexington & Fortieth Corp.* v. *Callaghan*, 281 N. Y. 526, 531; *Nann* v. *Raimist*, 255 N. Y. 307; *Bareham* v. *City of Rochester*, 246 N. Y. 140.) The judgment may properly be modified, however, so as to enjoin the use of the causeway by any person other than plaintiff town, its grantees, licensees and permittees; which additional relief should have the incidental effect of relieving plaintiff's expressed concern as to the possible accrual of rights by adverse possession, under the existing situation. Judgment modified, on the law and the facts, so as to award to plaintiff additional relief, by enjoining the use of the causeway, in the judgment and in the complaint referred to, by any person other than plaintiff, its grantees, licensees and permittees, and, as so modified, affirmed, without costs. Gibson, P. J., Herlihy, Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Gibson, P. J.